(20 App. Div. 633.)

DAVIS v. FOWLER BROS., Limited, et al.     (No. 3.)

(Supreme Court, Appellate Division, Third Department.     September 8, 1897.)

1.  ACCOUNTS—OVERCHARGES—EVIDENCE—SUFFICIENCY.
    A seller for a number of years sent monthly statements to the buyer, making a certain charge for carrying charges, which the seller testified was agreed upon.  The buyer testified that a smaller charge was the one agreed upon, but he paid the charges as claimed by the seller, and made no protest until nearly the time of an open rupture between him and the seller, nor did his books show any error in such charges until near the time of such rupture.  *Held*, that his claim of overcharge was not proved.

2.  SALES—ACQUIESCENCE IN CHANGED TERMS—CARRYING CHARGES.
    A seller at the buyer's orders had meats ready for January delivery, with the understanding that he was to ship them when ordered by the buyer. who agreed to pay carrying charges during the period the meats were held awaiting his orders.  He made no order before March, when the seller sent them without an order from the buyer, who received them, and charged the seller with the loss that was caused by the meats being sent before he was ready for them.  *Held*, that he was liable for the carrying charges.

3.  SETTLEMENTS—EXECUTION OF NOTE.
    Defendant made an advance of money on behalf of plaintiff, and subsequently plaintiff, having full knowledge of the facts connected with such advance, executed a note to defendant, and the amount of such advance was an item in the consideration thereof.  *Held*, that the execution of the note settled all questions as to the propriety of such advance.

4.  PAYMENT OF UNJUST CLAIM—RECOVERY.
    Defendant employed some one to examine plaintiff's books for defendant's benefit, and charged the expense thereof to plaintiff, who paid it, and subsequently, in consideration of plaintiff's renewing certain notes, defendant wrote that every claim of plaintiff shown to have any merit would be carefully considered and adjusted.  *Held*, that plaintiff could recover back said payment.

Appeal from judgment on report of referee.

Action by Mark Davis, as assignee of the Davis Provision Company, against Fowler Bros., Limited, and another.     From a judgment

for plaintiff, on the report of a referee, defendants appeal.   Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

Wilton C. Percy and J. Newton Fiero, for appellants.

T. F. Conway, for respondent.

LANDON, J.   The claims for which the plaintiff, as assignee of the Davis Provision Company, seeks recovery, are:

1. Five claims for meats purchased in 1892, which were of bad quality upon their arrival to plaintiff's customers, to whom the defendant shipped them upon plaintiff's order.   The plaintiff bought these goods of defendant, defendant to carry them until plaintiff gave orders to ship them.   They were shipped as plaintiff gave the orders. Plaintiff paid defendant for them in full, pursuant to the usual course of business between the parties, and, because of their bad quality, the plaintiff sustained the losses allowed by the referee,—total, $1,260.51, to which interest was added.   These claims arose after June 24, 1891, the date of the so-called meeting of the plaintiff's board of directors, of which mention is made in cases Nos. 1 (47 N. Y. Supp. 205) and 2 (Id. 219).   I think, upon all the evidence, the judgment should be sustained as to these claims.

2. Various claims for carrying and storage of the meats sold by defendant to plaintiff, covering the period from February 28, 1890, to July 14, 1891; that is, for the storage or keeping on hand by defendant in Chicago, ready for delivery, of the meats bought by the plaintiff of defendant, including insurance and interest, if any, during the time elapsing between plaintiff's purchase of defendant, and plaintiff's orders to defendant to ship to plaintiff's customers the parcels thereof, as severally sold by plaintiff to each customer.   This is to say, so long as plaintiff's goods lay in defendant's warehouse, the plaintiff was incurring "carrying charges."   The plaintiff paid these charges to defendant in the usual course of business between the parties, and now seeks to recover the alleged excess of charges paid by it to defendant.   The referee allowed the plaintiff about $1,300.   There was an agreement between the parties as to what these charges should be, but a disagreement upon the trial as to the terms of the agreement.   I think one of these claims should be allowed, namely. bill on invoice No. 1,085½, rendered by the Anglo-American Company to plaintiff, March 1, 1890.   This was rendered at 12½ cents per bar-rel, after 30 days; total charged and paid, $656.25.   The charge at 12½ cents seems to be right according to Mr. Davis' testimony.   The only question, then, is as to 60 days clear.   There were 2.671 barrels, which, at 12½ cents overcharge for one month, would be $333.87, and this the referee allowed.   Davis testified that plaintiff wrote to Fowler, objecting to the overcharge, and Fowler promised to look it up, but never did.   Davis testified that this was a special lot, and the bargain for storage a special one.   Stobo testified: "Sometimes there may have been a special case, where they might make a special arrangement, but, as a general rule, there was no such arrangement."

I think the remainder of these claims are not meritorious.   The plaintiff alleges that there was to be no carrying charge for the 30 days after plaintiff's purchase of goods; that after 30 days the charge

was to be 12½ cents per barrel per month for pork, and per tierce for hams; and that any fraction of a month exceeding five days should be rated half a month. The defendant claims that the charge was to be 25 cents per month per barrel and per tierce, with no allowance of 30 days free of charge; and defendant rendered its monthly bills, and plaintiff paid them, upon this basis. The plaintiff's case is supported by the testimony of Henry Davis, the defendant's, by that of Henry Stobo, by the bills rendered and paid, by the books of both parties, by the entries of February 9, 1891, and June 24, 1891, in the book of minutes of plaintiff's board of directors, by the silence of the plaintiff until about the time of the open rupture between the parties. While I think it is clear, in respect of the defective meats, that the understanding between the parties was that defendant should make good to plaintiff the damage actually sustained by the plaintiff in consequence of the defects, notwithstanding plaintiff's payment of defendant's bills as rendered, it is not clear that a like understanding existed as to other matters. These bills were rendered monthly, and the plaintiff paid them with full knowledge of the facts, and without protest at the time of payment, nor until long afterwards. The reason for the understanding as to the defective meats is obvious, for their good quality was vital to the success of plaintiff's business, and, as plaintiff did not see the meats sent by defendant to plaintiff's customers, the plaintiff had to await the complaints of its customers; but an error in carrying charges the plaintiff could detect when it received defendant's bill. Why it paid these bills year in and year out without complaint is not satisfactorily explained. It is true that Henry Davis testified with respect to these charges: "We rejected them when we received them. When the charges were made, we returned them." But the plaintiff's books do not corroborate him. In a case so largely made up of bills, invoices, letters, telegrams, and extracts from ledgers, the written evidence of immediate rejection is not pointed out, whereas the written evidence of acquiescence is very considerable. Later rejection as the relations of the parties approached a rupture suggests preparation for it. There is, indeed, the letter of Anderson Fowler of June 7, 1892, "that every claim of the Davis Company shall be taken up, carefully considered, and, if it is shown to have any merit, the claim shall be properly adjusted." If these bills had been paid upon the strength of this letter as the plaintiff's notes of March, 1892, were renewed and paid upon it, or if they were shown to be meritorious, but technically prejudiced by a settlement which might have included them, but really did not, the case would be different. The difficulty with these claims is, they never were valid. We think the clear weight of the testimony is opposed to the finding of the referee respecting these claims, with the exception of the one allowed.

3. The claim allowed by the referee at $1,402.50 for carrying charges and freight upon the lot of 550 tierces ordered for January, 1891, delivery, which was held by defendant until March, 1891, and then shipped to plaintiff for defendant's convenience, without awaiting plaintiff's special orders, should have been disallowed, upon the facts found. We have held in action No. 2 that the plaintiff was entitled to recover $2,047.40, the damages it sustained upon this lot of

goods by reason of the loss the plaintiff sustained by reason of defendant's departure from the terms of the contract as to delivery, and plaintiff's acquiescence therein upon defendant's promise of indemnity. In other words, the plaintiff recovered upon the basis of its acquiescence for a consideration in the changed terms of delivery. Therefore it was liable for the carrying charges and freight in like manner as if the terms of delivery adopted had been the original terms.

4. The item of $1,288.05, called the "stock-yard item," and allowed by the referee, should have been disallowed. The Minnesota Packing Company, of which Henry Davis was vice president and manager, sent goods to the Stock-Yards Warehouse in Chicago for storage. Davis had them sent there in order to raise money for the Minnesota Company upon the warehouse receipts, which he did by drawing drafts upon the Davis Provision Company. The Davis Company, we assume, accepted the drafts; but, as the Minnesota Company could not pay the drafts, the Davis Company had to take the goods, and, in order to enable it to do so, the Anglo-American Company paid the Stock-Yards Company its storage charges,—$1,288.05. Apparently these charges were a lien upon the goods. That was a question between the Minnesota Company and the Davis Company. The Minnesota Company was then embarrassed for money, and, whatever former credit the Stock-Yards Company had extended it when its credit was good, it did not waive its lien upon this occasion; but, whether the lien existed or not, the Anglo Company, assuming to act for the Davis Company, paid them, and charged the sum to the plaintiff in its accounts, and the plaintiff paid it by including it in the amount of the note for $27,102.21 given by the Davis Company to defendant, March 11, 1892. How it was done is stated in the opinion in case No. 1. It was done with full knowledge of all the facts except as to the amount of the item, and how that should be ascertained was agreed upon. Whatever other claims Davis then reserved for future adjustment, he did not reserve this. We think it is too late for the plaintiff to change its position, to the prejudice of the Anglo-American Company, after having had the benefit of the Anglo Company's advance.

5. There is no objection, except its age and presumptive inclusion in the settlement of June 24, 1890, to the plaintiff's claim of $123.50 for the expenses of Mr. O'Connor in going to Albany to examine the Davis Company's books, at the instance of the Anglo-American Company, in November, 1887. The expense was incurred for the defendant, but charged by it to the Davis Company, and paid by it. The item seems to be meritorious, and, as such, the defendant ought to have allowed it, pursuant to the terms of Mr. Fowler's letter of June 7, 1892. This item is embraced in the separate judgment against the Anglo Company.

It follows that the separate judgment against the defendant the Anglo-American Provision Company should be modified by reducing it to the items $333.87 and $123.50, with interest thereon as allowed in the judgment, and against both defendants by reducing it to $1,260.91, with interest from May 9, 1893, with the costs as allowed below, less allowance upon the amounts deducted, and, as reduced, affirmed, without costs. All concur.