Illinois Association of Remittance Agents, a Not-For-Profit Corporation of the State of Illinois, Roy Lundgren, Individually and on Behalf of All Licensed "Remittance Agents" of the State of Illinois, Plaintiffs-Appellees, v. Paul Powell, Secretary of State of the State of Illinois, Defendant-Appellant.

Gen. No. 11,137.

Fourth District.

May 18, 1970.

William J. Scott, Attorney General of State of Illinois, of Springfield (Francis T. Crowe, Assistant Attorney General, of Chicago, of counsel), for appellant.

Graham & Graham, of Springfield, and Snyder, Clark, Dalziel, Holmquist and Johnson, of Waukegan, for appellees.

McCarthy, Scheurich, Duffy & McCarthy, of Chicago (John M. Duffy and Daniel J. McCarthy, of counsel), for amici curiae.

Fohrman, Lurie, Holstein & Sklar, of Chicago (Paul M. Lurie and Robert A. Holstein, of counsel), for class amici curiae.

SMITH, J.

In 1966, the Secretary of State inaugurated a program of authorizing banks to issue and distribute passenger vehicle license plates. A bank desirous of doing so entered into an agreement with the Secretary which set forth his requirements and the procedures to follow. There are, as we know, other means of obtaining license plates, such as mailing an application to the Secretary or seeking out the services of a licensed remittance agent. Banks furnishing this service have steadily increased from an initial twenty-three to now around eighty-seven. Likewise, the number of plates distributed through them has increased from some 612,000 in 1967 to over a million in 1969. Under their agreement with the Secretary, the banks involved process the application, determine and receive the correct fee, issue the plates and remit the fee to the Secretary. All of the equipment necessary for processing is standardized and all expenses are borne by the banks. The availability of this arrangement gives banks an opportunity to provide an

additional service for their customers, or for that matter, noncustomers—something they apparently like to do— and on top of that they charge a fee—generally $1. The Secretary's agreement doesn't prohibit this charge nor has he published any suggested fee schedules for the banks to follow. In short, he has said nothing at all apropos thereof. Those in a bank responsible for issuing the license are its employees and the Secretary exercises no supervisory control over them whatsoever. Nor do the applicants. As long as the banks follow the procedures outlined in the agreement, and the requests of the applicant, all goes well. As we have said, all expense incidental to issuance, even to the extent of purchasing the validating machines, the banks pick up. The banks even pick up the plates—literally, from the Secretary. The General Assembly at its last session did authorize the Secretary to prescribe maximum service charges for persons authorized "to receive and remit or transmit to the Secretary such renewal application and fees therewith," but we are not concerned with such here, but rather with the propriety of the assumption by the Secretary to act in the first instance, and if proper, whether the banks can charge a fee of the applicant.

The Secretary, defendant, says he has the right to authorize banks to do that which has just been described. Plaintiff, Illinois Association of Remittance Agents, disputes this. They say that the Remittance Agents Act provides the only avenue of doing what the Secretary and the banks are presently doing—that the banks have not complied with the Act, and, perforce, are acting illegally. Banks, they argue, should become licensed remittance agents, like their members. The Remittance Agents Act (Ill Rev Stats 1969, c 16½, §§ 91–100) in § 92 defines a "remittance agent" as any person ". . . who holds himself out to the public as being engaged in, or who engages in accepting money for remittance to

325

the State of Illinois . . . for the payment of vehicle taxes or vehicle license or registration fees; . . . ." The purpose of the Act, so the first section says (§ 91), is to provide some means of regulation of remittance agents because of the obvious hazard of irresponsible agents failing to make remittance with "consequent loss to the remitters."

The Secretary argues that this Act is not exclusive, and his agreement with the banks is perfectly proper. Suffice it to say while banks could doubtless qualify as remittance agents, they disincline to do so, and as we have seen, to date, they have been able, in fact, to operate as remittance agents without so complying. Whatever their reasons, they haven't had to, and as we now hold, they don't have to, so long, that is, as the Secretary continues the present arrangement with them.

■ The provision of the Act which takes banks out of the Remittance Agents Act and precludes its use as a bar to their present arrangement with the Secretary is § 6(1), (Ill Rev Stats 1969, c 16½, § 97) which reads:

"This Act shall not apply to (1) any person who accepts for remittance only such sums as he is authorized to collect by the *remittee* as its agent, . . . ." [Emphasis supplied.]

The Secretary points also to (2) of this section as additional authority for the noninclusion of banks:

". . . (2) to any person who, in connection with the issuance of a license to him to conduct a business in this State, shall have filed, pursuant to a statutory requirement, a surety bond covering the proper discharge of any liability incurred by him in connection with the acceptance for remittance of money for the purposes designated in the Act. . . ."

The banks, the Secretary says, all have a "Bankers blanket bond." This feature, while doubtless reassuring, does not, in our opinion, provide a statutory basis for exclusion, though the argument has much to commend it.

 It seems to us the banks that have signed up fall precisely within this exception, § 6.1, as they are indeed agents of the "remittee," the Secretary, and are authorized by him to accept for remittance only such sums as they are authorized to collect.

 Assuming we are right, plaintiff next questions the modus operandi of the banks in collecting a fee for themselves in addition to license fees. This is really the nub of the Association's complaint. But before providing an answer, we must first answer the question as to whether this kind of agreement can properly be entered into by the Secretary and we can do so without further ado by responding in the affirmative, since it is not prohibited by law and no public policy we are aware of positions it beyond the pale.

 There is no authority provided by law which allows banks to charge a fee, nor, as we have seen, does the Secretary authorize them to do so. But we deem all this somewhat beside the point. The true answer lies in distinguishing between the banks as agents for the Secretary and as agents for the applicants. Most assuredly, the banks themselves are not employees of the Secretary or the applicants. We can agree with the statement in Sprinkle v. Cass County, 340 Ill 382, 172 NE 720, 721, cited to us by the Association, and yet hold that the fee charged is proper for the reason that a bank when exacting does so as an agent of the applicant who is the one who pays it:

> "Compensation for official services rendered in behalf of the state or any public corporation rests wholly upon statutory provision or authority. . . .

Public officers have no claim for official services rendered except where, and to the extent that, compensation is provided by law. . . ."

True, the Motor Vehicle Act sets forth the fees for plates (Ill Rev Stats 1969, c 95½, §§ 3–801 to 3–834), and the Secretary and his employees are prohibited from charging anything more, even a fee for administering an oath. (§ 2–107, c 95½.) But these prohibitions are as nothing to a bank when charging a fee of an applicant for its services as his agent in processing his application for plates.

The trial court found that the banks were "employees or agents" of the Secretary and were prohibited from charging a fee, reasoning that the law governing the flat fee restrictions on the Secretary applied with equal effect to the banks, that is, since the Secretary could only charge the statutory fee—not something in addition for going through the mechanics of issuance— then the like effect as to his "employees or agents"— here the banks.

It is true, of course, that a public employee or officer in the performance of his duties cannot in addition to his authorized compensation, whether by fee (now almost passé) or salary (today's mode) exact something additional. There may be perquisites but that is not the same as additional remuneration. But, in holding as we do, there is no dilution of this salutary principle which prohibits public officials or their employees and agents from accepting other than the compensation provided by law. Quite the contrary—the banks here charge the applicants for their services as their agents—a selection, or rather election, of their own making. The banks are not agents of the Secretary of State when they perform this service for the applicants and a charge is, therefore, permissible. The banks serve in a dual capacity, as an agent for the applicants when the banks' services are sought, and as

328

an agent for the Secretary when it processes the applications and remits the requisite fees. There are other ways of obtaining plates, by mail or appearing personally at one of the Secretary's distribution centers, where there is no charge. However, if one seeks the aid of a bank in obtaining plates, the bank then becomes his agent and, as we have said, a charge is proper. There is nothing unusual in any person or corporation serving two principals in a given transaction where the services to each are consistent with his duty to each and the interest of neither is disparaged.

Accordingly, the judgment appealed from is reversed and remanded with directions to enter a final decree in accordance with the views herein expressed.

Reversed and remanded.

CRAVEN, P. J. and JONES, J., concur.