IRA F. GUDGEL, Executor of the Estate of JOHN T. GUDGEL, Deceased, Plaintiff-Appellant, *v.* ST. LOUIS FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.

(No. 54505;

First District—September 30, 1971.

Mort A. Segall, of Champaign, for appellant.

Graham, Meyer, Young, *et al.*, of Chicago, (Thomas A. Graham and Charles R. Young, of counsel,) for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The facts of this case arose out of a motor vehicle accident which occurred on June 30, 1963, at Danville, Illinois. The plaintiff-appellant, John T. Gudgel, a citizen of Indiana, was driving a car which collided

with a truck-tractor driven by one Bud Freischlag, a citizen of Illinois. Gudgel instituted a negligence action to recover for injuries he sustained naming as defendants: Freischlag; Southern Shippers, Inc., a Mississippi corporation and common carrier which had leased the tractor for a period of one year on November 8, 1962; Wally Fondaw, a Mississippi citizen who is the President of Southern Shippers, Inc.; Gene Moffett, an Illinois citizen whose name appears as owner-lessor of the lease agreement covering the tractor; and Cecil Shockley, an Illinois citizen who had apparently purchased the tractor from Moffett prior to the collision and regularly drove the truck.

The alleged liability of Southern Shippers, Inc. in the previous action was based on the theory that there was a master-servant relationship between Southern Shippers, Inc. and Freischlag. This theory was evidenced by the lease and testimony of Freischlag, corroborated in part by a co-worker that Shockley and Freischlag had received certain directions from Southern Shippers, Inc. to haul some corn on the day prior to the accident. Freischlag alleged that it was pursuant to such directions that he was operating the trailer on the day of the accident. The co-worker's testimony agreed with Freischlag as to the destination, but he stated the corn was to be transported for Shockley.

Southern Shippers' theory of the case was that no master-servant relationship existed at the time of the accident with Gudgel, because the lease had been effectively cancelled by Southern Shippers, Inc. as of June 28, 1963, two days prior to the accident, as a result of which they no longer had any control of the tractor. They also contended they gave no instructions of any nature to Freischlag or Shockley on the day prior to the accident.

The case came to trial in the United States District Court for the Eastern District of Illinois. At the close of the plaintiff's case the trial court granted motions dismissing defendants Moffett and Fondaw from the case and denied Southern Shippers' motion to dismiss. Shockley was apparently never served and thus did not appear. Southern Shippers, Inc. moved for a directed verdict at the close of the defendant's case, and the court denied its motion. The jury returned a general verdict against defendants Freischlag and Southern Shippers, Inc. Southern Shippers, Inc. moved for a judgment notwithstanding the verdict, and the trial court granted the motion. The trial court concluded that as a matter of law the plaintiff "had failed to prove by any evidence any negligence which would authorize or support any verdict against defendant Southern Shippers." The trial court rendered a final judgment against Freischlag in favor of the plaintiff in the amount of $9,939.93.

The plaintiff appealed the granting of the judgment *n.o.v.* to Southern

Shippers, Inc. The United States Court of Appeals for the Seventh Circuit affirmed the judgment concluding that the evidence in favor of Southern Shippers' theory of the case was overwhelming.

Gudgel has now filed suit in Cook County against the instant defendant, St. Louis Fire and Marine Insurance Company, the insurer of Southern Shippers. In this action the plaintiff contends that Freischlag was an "insured'" within the meaning of that term as defined in the policy of insurance issued by the defendant to Southern Shippers, Inc. which was in effect at the time of the collision. Therefore, the insurance company is bound to indemnify Freischlag against the judgment.

The insurance policy in question, which was made a part of the record here, includes in the definition of an "insured party" the following language:

"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word "insured" includes the named insured and also includes any person while using an *owned* automobile or a *hired* automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. . . ." Emphasis added.

The plaintiff argues that regardless of whether Freischlag was acting as an "agent or servant" of Southern Shippers at the time of the collision, he was operating the vehicle with their permission and hence fits within the definition of "insured" as set out in the aforementioned policy. Therefore, plaintiff argues that the defendant is liable to indemnify Freischlag in the amount of the final judgment of $9939.93.

Prior to trial, the defendant moved to dismiss the complaint alleging that the plaintiff's cause of action was barred by the previous rulings of the federal courts in the original case involving Southern Shippers, Inc. Defendant argued that these decisions including findings of fact which are effective to bar the present action under the doctrine of collateral estoppel or "estoppel by verdict."

The plaintiff filed a motion to strike the defendant's motion stating that the defendant's motion was insufficient in law to show a defect in the complaint, and that the defendant was pleading conclusions unsupported by factual matters of record and that defendant's Exhibits A and B (which were copies of the opinions of the District Court and the Court of Appeals in the original action) were not properly authenticated, and the affidavit of defendant's attorney was factually insufficient to support the defendant's motion.

The trial court dismissed with prejudice the motion of the plaintiff to

strike, and allowed the defendant's motion to dismiss and entered judgment in favor of defendant and against plaintiff.

We vacate the judgment below and remand with instructions.

Since we are vacating the judgment below and the trial court may, depending on its finding, reinstate that judgment, we will answer both issues raised by plaintiff.

First, the plaintiff contends that the defendant's motion to dismiss failed to properly allege that the cause of action was barred by a prior judgment. He bases this argument on the grounds that the documents attached to the motion purporting to be the order of the Federal District Court, and the decision of the Federal Court of Appeals in the original action involving Southern Shippers, Inc., were uncertified and unauthenticated contrary to Ill. Rev. Stat. 1969, ch. 51, pars. 13 and 55, and further argues that the affidavit attached to defendant's motion, on its face, should have, but did not contain, factual matters of record to defeat the defendant's cause, since no such facts appeared on the face of the complaint which would defeat the plaintiff's cause of action.

Finally, the plaintiff contends that the defendant's reliance on Supreme Court Rule 133(b), Ill. Rev. Stat. 1967, ch. 110A, par. 133(b) is misplaced, because it is the plaintiff's position that the Supreme Court Rule conflicts with ch. 51, pars. 13 and 55, and that the rule must bow to the statute. We do not agree.

The Ill. Rev. Stat. 1969, ch. 51, pars. 13 and 55 provide as follows:

"par. 13: The papers, entries and records of courts may be proved by a copy thereof certified under the hand of the clerk having the custody thereof, and the seal of the court, or by the judge of the court if there be no clerk.

par. 55:   *   *   *   the records and judicial proceedings of any such State, Territory or Possession, or copies thereof shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

The Ill. Rev. Stat. 1969, ch. 110A, par. 133(b) provides as follows:

"(b) Judgment or Order. In pleading a judgment or order of any state or federal court or the decision of any state or federal officer or

board of special jurisdiction, it is sufficient to state the date of its entry, and describe its general nature and allege generally that the judgment or decision was duly given or made."

■■ The Supreme Court has under Ill. Rev. Stat. 1969, ch. 110, par. 2 the power to make rules of pleading, practice and procedure for the circuit, Appellate and Supreme Courts supplementary to, but not inconsistent with, the provisions of the Illinois Civil Practice Act. Rule 133(b) is by its terms applicable only to the pleading stage of adjudication. Ill. Rev. Stat. 1969, ch. 51 speaks to the traditional rules governing admissibility of evidence at trial.

■■■ Thus, the rule and the two sections of the statute are not in conflict. The defendant has complied with Rule 133(b) and to that extent has properly pleaded the prior decisions of the federal courts in question.

The second issue raised by the plaintiff is that any "prior judgment" of the Federal Trial or Appeals Courts does not stand as a bar to his present action since this action and the issue it raises are different from the previous action. Specifically, he argues that the previous action involving *Southern Shippers* spoke to the issue of "respondeat superior" and called for a determination of whether Freischlag was the servant of Southern Shippers at the time of the accident. In the case at bar the issue is whether or not Freischlag was a "permissive user" at the time of the accident and hence covered under the terms of the defendant's insurance policy. He argues that in determining whether or not this issue was passed on in the previous action we can look only to the decision of the Federal Trial Court and not the decision of the Federal Court of Appeals.

■■■ In making the argument that the "prior judgment" is no bar to the present action because the cause of action in the instant case is different from that in the previous action, we note that the plaintiff is speaking to the traditional doctrine of *res judicata*. Therein the courts have held a prior judgment to be no bar to a later course of action unless the parties, the thing sought to be recovered and the cause of action are identical in both proceedings. However, the defendant in the instant case is urging not *res judicata* but a branch thereof, namely, the doctrine of collateral estoppel. Basically that doctrine establishes that the adjudication of a controlling fact or matter at issue between the parties to an action is conclusive as an "estoppel by verdict" or collateral estoppel in a subsequent action between the same parties or their privies, regardless of whether the cause of action is the same in both lawsuits. See *City of Elmhurst v. Kegerreis* (1946), 392 Ill. 195, 64 N.E.2d 450; *Smith v. Womack's Estate* (1958), 17 Ill.App.2d 264, 149 N.E.2d 778.

■■ The plaintiff's argument that in urging a "prior judgment" as a bar

to a later action the party asserting the bar can look only to the decision of the trial court and not to any subsequent appellate court decisions draws our qualified agreement. We agree that as a general rule this is the law in Illinois. This was set out in the case of *222 East Chestnut Street Corporation v. 199 Lake Shore Drive* (1960), 24 Ill.App.2d 545, 165 N.E.2d 71 where this court said at page 550:

"It has consistently been held that a former adjudication does not rest on the opinion of the court of review, but on the judgment of the trial court which has become final through affirmance. *City of Elmhurst v. Kegerris*, 392 Ill. 195; *Pelouze v. Slaughter*, 241 Ill. 215."

■■ However, we do not agree that this court when faced with the brief opinion of the Federal Trial Court reciting none of its findings and being without benefit of the record in that earlier case is barred from taking note of any recitation of such matters of record or findings in the decision of the Federal Appeals Court. It is of necessity that the record before that court is the same one that was before the trial court, and any findings of fact dealt with are findings made by the trial court. In so doing this court does not violate the principle that it is the decision of the trial court which constitutes the "prior judgment" in bar of later actions. Rather it seeks to bring meaning to that term, to determine exactly what issues and findings are finally adjudicated by that "prior judgment."

■■ The Illinois courts have recognized that where a plaintiff is defeated in an action based on a certain theory of his legal rights or as to the legal effects of a given transaction or state of facts through failure to substantiate his view of the case, this will not as a rule preclude him from renewing the litigation without any change of facts, but basing his claim on a new and more correct theory. (See Illinois Law and Practice (1969), Vol. 23, par. 342.) The new theory may not be merely a change in theory of what is essentially a single cause of action. If that is the case, the doctrine of *res judicata* will apply. In the case at bar, plaintiff appears to have met the necessary requirements to allow him to renew the action. His present action is one of contract and is based on the insurance policy between the instant defendant and Southern Shippers, Inc. His previous action was in tort and was based on a theory of agency. Whether collateral estoppel applies to bar the present action depends on whether in the previous action against Southern Shippers, Inc. there was a finding of fact adverse to the plaintiff which, of necessity, would blunt his theory in this case. The critical finding it seems to us would have been whether the lease agreement under which Southern Shippers, Inc. had leased the tractor involved in the accident was effectively cancelled on June 28, 1963, as testified to be Southern Shippers,

Inc. in the original action and as claimed by the defendant in the case at bar. This is so, first, because there is no other evidence except the lease of a relationship between Southern Shippers, Inc. and Shockley or Moffett which would have allowed Southern Shippers, Inc. to control the truck via permission, and second, because coverage under the insurance policy involved here was expressly limited by its own terms to "owned or hired automobiles." The issue of ownership was conclusively answered in favor of the defendant at the previous trial with the express findings by the Federal District Court that Southern Shippers, Inc. did not own the tractor involved in the accident. Since the record gives no indication of any "hire" relationship outside the lease, it is clear that if the lease was cancelled, Southern Shippers, Inc. no longer had any control over the tractor. As a result they could neither give nor withhold their permission to use such. From the evidence introduced at the trial in the Southern Shippers, Inc. case and alluded to by the Federal Court of Appeals, it would appear that the lease was cancelled. However, this fact cannot be determined from the record. The memorandum of the District Court did not speak to the lease and the opinion of the Court of Appeals assessed the evidence regarding the lease as a part of the case theories of both parties without indicating whether a specific finding, as to the lease, was ever made. The Court of Appeals said at page 5 of its opinion:

"\* \* \* The lease which gave Southern Shippers the right to control the tractor, supports a weak inference that the tractor was being operated under its control and in its business when the collision occurred.

The evidence in support of Southern Shippers' position is overwhelming. The president of Southern Shippers, Wally Fondaw, testified that he did not know Freischlag, that he cancelled the lease on June 28, 1963, because Shockley had torn the top out of the company's trailer by hitting an underpass, that the trailer was damaged so badly that it was not suitable for transporting anything, and that no instructions were given to Freischlag or Shockley to do anything after \* \* \* June 28, 1963, \* \* \*."

■■ Nor is the grant of the judgment *n.o.v.* in favor of Southern Shippers, Inc. conclusive as to the fact of cancellation. Under the applicable procedural standard governing such motions as set out in *Baltimore & Ohio RR. Co. v. Muldoon*, 102 F.2d 151 and applied by the trial court in the previous case, we think it quite conceivable that the motion could have been granted without a finding that the lease had been cancelled. That is, the conclusion as a matter of law that no master-servant relationship existed would not preclude a finding that the lease agreement was still in effect.

In accord with the above, we are vacating the judgment below and remanding to the trial court for a hearing to determine whether or not a cancellation of the lease ever occurred. If the court below finds that the lease was effectively cancelled, it should reinstate the judgment in favor of the defendant. If the court below finds that the issue of cancellation was not litigated or that the finding was that the lease was in effect on the date of the accident, it may not reinstate the judgment, but must grant the plaintiff's motion to strike the defendant's motion to dismiss and allow the action to proceed.

Judgment vacated and remanded with instructions.

McNAMARA, P. J., and DEMPSEY, J., concur.