J. Joseph Corbett *et al.*, Plaintiffs-Appellants, *v.* Devon Bank *et al.*, Defendants-Appellees.

(No. 56690;

First District (1st Division)—June 25, 1973.

562

Fohrman, Lurie, Holstein, Sklar & Cottle, Ltd., of Chicago, (Paul M. Lurie, of counsel,) for appellants.

McCarthy, Scheurich, Duffy & McCarthy, of Chicago, (John M. Duffy, Daniel J. McCarthy, and Stephen A. Snakard, of counsel,) for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This proceeding is a class suit which seeks to halt renewal sales of Illinois motor vehicle licenses through various banks in the state, and an accounting for service charges paid to the banks. The named plaintiffs, J. Joseph Corbett, Gerald M. Penner and Charles Cohn, have appealed from an order entered by the circuit court sustaining the motions of various defendants and dismissing the suit for want of equity. Plaintiffs joined as named defendants some 34 banks doing business in Illinois. Plaintiffs also joined, as class defendants, all other banking institutions in Illinois which have collected service fees in connection with these transactions. The named defendants as well as the class defendants will be referred to as "defendants", as they are in the pleadings. The Secretary of State of Illinois (Secretary) was also named as a defendant.

The pertinent facts appear from the properly pleaded allegations of the second amended complaint, admitted by the motions to dismiss. (*Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 963, 282 N.E.2d 452 and cases therein cited.) The second amended complaint alleged that plaintiffs brought the suit individually and on behalf of all other persons similarly situated who have obtained Illinois motor vehicle registration plates since 1965 and who will in the future obtain such plates from defendants and who have paid and will in the future pay service charges to defendants in connection with such purchases. The defendants had entered into written agreements with the Secretary which designated them as his authorized agents for the distribution of renewal license plates for passenger cars and for the collection of the statutory fees from plaintiffs. A copy of the agreement was appended to the complaint.

It was also alleged that the only authorization for the collection of such fees and charges by defendants is that set forth in the applicable statute. The statute provides for purchase of motor vehicle licenses by the owners thereof, and for payment by them to the Secretary of annual registration fees at specified rates. (Ill. Rev. Stat. 1971, ch. 95½, par. 3— 806.) Each of the named plaintiffs had obtained license plates from the Secretary in the past and they had, after 1965, purchased these license plates from one of the named defendant banks. In each such instance, before the bank would issue the license plates, it had required payment from the named plaintiffs, and from other members of the class represented herein, of a service fee of $1 for each set of plates for each year. The second amended complaint described these charges as "unlawful." It alleged that the Secretary had allowed and assisted such unlawful activity by furnishing the defendants with license plates for distribution.

The second count of the second amended complaint adopted the principal allegations of the first count. In addition, it alleged that all of the defendants were either state banks governed by the Illinois Banking Act (Ill. Rev. Stat. 1971, ch. 16½) or were national banks governed by the National Bank Act (Title 12, United States Code) and by regulations issued pursuant to these statutes. It further alleged that there was no authority in these statutes or regulations for defendants to distribute license plates and to profit from this service by charging fees in addition to those authorized by statute.

The second amended complaint prayed a variety of relief: a declaration that the service fees required by defendants for 1966 to 1971 inclusive were illegal and unlawful and for injunction against this practice; an accounting by defendants to plaintiffs for all charges thus wrongfully collected plus interest during the specified and subsequent years; an order segregating all funds thus wrongfully collected; injunction preventing the Secretary from furnishing license plates to defendants or otherwise assisting them in the wrongful practice; injunction restraining defendants from collecting service charges from plaintiffs; injunction against prosecution of other actions in any court involving plaintiffs in the same class and raising substantially similar issues; and, finally, allowance of reasonable attorneys fees.

The written agreements entered into between the defendants and the Secretary provided that the bank was to purchase at its own cost a machine used to validate renewals of motor vehicle licenses. The signatory banks were authorized to issue only renewal license plates for passenger automobiles. The bank agreed to send at least two employees for training by the Secretary regarding proper procedure in issuance of the plates. The bank assumed full responsibility for transporting a

supply of license plates to its place of business and for returning unsold plates to the Secretary within two weeks after the last official date for purchase thereof. The bank agreed to keep all license plates safely in its custody and to indemnify the Secretary and the State of Illinois against loss of such plates and of revenues received by the bank. All such revenues were to be transmitted daily to the Secretary in Springfield. The bank assumed full responsibility for furnishing the required help. In addition, the bank was to obtain a proper bond holding the Secretary harmless against all acts or failure to act by the bank or its employees and copies of this bond were to be furnished to the Secretary.

The record shows three separate motions to dismiss the second amended complaint. One of the motions stated that Count I failed to state a cause of action because the claims of the individual plaintiffs against defendants were all separate and independent without community of interest; plaintiffs have received the full benefit of voluntary transactions and that the decision in the *Remittance Agents* case is dispositive of the issues raised. (*Illinois Association of Remittance Agents v. Powell,* 122 Ill.App.2d 322, 258 N.E.2d 827.) As to Count II, the motion set forth that no cause of action was stated because the claims of members of the purported class were distinct and independent without community of interest; the validity of transactions engaged in by the banks could not be questioned by private parties who were voluntary participants, who received the full benefit of the transactions and were not injured therefrom; and, also, that plaintiffs were not creditors, shareholders or competitors of the banks; further, that the collection of service charges by the banks was permitted by law. Similar motions to dismiss were filed by certain of the remaining banks.

In this court, plaintiffs urge that the banks have no authority to charge for this type of service. Under this heading, they contend that no such authority results from statutes or regulations; the banks cannot charge amounts in excess of that established by statute; the agreements between plaintiffs and defendants were void as against public policy and permitting recovery by plaintiffs would advance enforcement of public policy. Plaintiffs also urge that this court is not bound by the previous decision in *Illinois Association of Remittance Agents v. Powell,* 122 Ill.App.2d 322, 258 N.E.2d 827 (leave to appeal denied), decided in the Fourth District of this court in 1970. Plaintiffs have also argued at length that their complaint constitutes a valid class action characterized by community of interest of plaintiffs in a dominant and pervasive issue.

This court has been favored with two separate briefs expounding the theories of defendants. One bank has filed its individual brief and another brief has been filed in behalf of a great many other defendant

banks. These briefs urge that service charges paid to the banks may not be recovered because they were voluntary payments. They contend that collection of these charges is not *ultra vires* or outside the authority of the state and national banks; and, regarding completed or executed transactions, plaintiffs may not recover on the *ultra vires* theory. In this connection, defendants urge that the issues regarding legality of collection of the service charges have been disposed of by the *Remittance Agents* case which this court is obliged to follow as precedent. Finally, defendants contend that the claims here may not be maintained as a class action since no common question of law and fact exists; there is no community of interest by plaintiffs in a dominant issue; the members of the class do not share a common interest in asserting a claimed right and plaintiffs do not fairly and adequately represent the class.

It is advisable at the outset to consider the previous decision in the *Remittance Agents* case cited above. The proceedings there were initiated in the circuit court of Sangamon County by the Illinois Association of Remittance Agents. The members of this association were licensed under the applicable statute which authorized them to accept payment of fees for vehicle licenses and registration fees from members of the public and to remit these funds to the Secretary. (Ill. Rev. Stat. 1969, ch. 95½, pars. 3—900 to 3—917 inclusive.) Plaintiff sought to prevent sale of motor vehicle licenses by the Secretary acting through various banks, precisely as in the case at bar. The Secretary was the only defendant. The circuit court granted plaintiff the desired relief. This court (fourth district) held to the contrary and the decree appealed from was reversed. A number of the banks involved in the case at bar, while not parties to the suit, appeared as *amici curiae*. Similarly, the entire class of plaintiffs here involved also appeared in the appellate court as *amici curiae*. Each of these groups was represented by the same counsel which represent them respectively in the case at bar.

■■ The first issue in this phase of the case is whether the parties to the case at bar, who appeared as friends of the court in the preceding litigation, are bound to the previous result by principles of former adjudication or *res judicata* (see *Gudgel v. St. Louis Fire and Marine Ins. Co.*, 1 Ill.App.3d 765, 770, 274 N.E.2d 597) or estoppel by verdict. (*Lange v. Coca-Cola Bottling Co.*, 44 Ill.2d 73, 75, 254 N.E.2d 467.) We do not believe that they are. It has been aptly and correctly held in this jurisdiction, in the recent case of *Bee Chemical Co. v. Service Coatings, Inc.*, 116 Ill.App.2d 217, 226, 253 N.E.2d 512, that "An amicus curiae is 'not a party to the action, but is merely a friend of the court whose sole function is to advise, or make suggestions to, the court' Clark v. Sandusky 205 F.2d 915, 917."

■■ The next problem is whether we are bound by the *Remittance Agents* decision. As a general proposition, this court is obliged to follow decisions of the Supreme Court of Illinois and of the United States Supreme Court. (*Hensley v. Hensley,* 62 Ill.App.2d 252, 259, 210 N.E.2d 568.) Both of these tribunals exercise appellate jurisdiction over the Appellate Court of Illinois. Quite to the contrary, since decisions of this court are not subject to review by federal courts other than the United States Supreme Court, by courts of any state other than Illinois, or by the appellate courts of other districts in the State of Illinois, we are not bound to follow the decisions of these other tribunals. (See *People v. Battiste,* 133 Ill.App.2d 62, 272 N.E.2d 808, citing *United States ex rel. Lawrence v. Woods* (7th cir. 1970), 432 F.2d 1072, 1075.) In this regard, note also *Parker v. Parker,* 335 Ill.App. 293, 299, 81 N.E.2d 745, where the second district of this court did not follow a decision by the first district thereof in the absence of a decision on the precise issue by the Illinois Supreme Court. Note also *Hughes v. Bandy,* 336 Ill.App. 472, 477, 478, 84 N.E.2d 664; affirmed 404 Ill. 74, 87 N.E.2d 855.

■■ However, it appears that the decision in *Remittance Agents* has been reviewed by the Supreme Court of Illinois which has denied leave to appeal. It is true, as urged by plaintiffs, that it has been held that denial of a petition for leave to appeal by the Supreme Council of Illinois is not precisely equivalent to a decision by that court. But, the denial of leave to appeal means necessarily that the Supreme Court has scrutinized the decision of the appellate court and the record in accordance with the applicable rule promulgated by the Supreme Court. (Ill. Rev. Stat. 1971, ch. 110A, par. 315(a).) It therefore appears to us that the denial of a petition for leave to appeal by the Supreme Court adds to the stature and to the effect of a decision of the appellate court. The proper principle to be applied here is that denial by the Supreme Court of a petition for leave to appeal from a decision of the Appellate Court of Illinois is an approval of the decision, or of the result reached, although not necessarily an approval of the reasons expressed by the appellate court. (*McCann v. Continental Cas. Co.,* 6 Ill.App.2d 527, 534, 535, 128 N.E.2d 624.) We, therefore, will adhere to the decision in *Remittance Agents.* "If the Supreme Court deems the question open to reconsideration, it can so indicate on an application for leave to appeal from this decision." *Stinson v. Edlen,* 27 Ill.App.2d 425, 427, 169 N.E.2d 682.

■■ *Remittance Agents* decided that the Secretary has legal power to authorize banks to handle renewals of Illinois motor vehicle licenses precisely as contracted for in the case at bar; public policy does not prohibit collection of a service charge by the banks from buyers of licenses, and

the collection of these service charges is not improper; and, finally, that it is legally proper and permissible for banks in a transaction of this kind to act in a dual capacity as agent for the Secretary of State and also as agent for the purchaser of the renewal license. We are in complete accord with the decision in the *Remittance Agents* case and with the principles established therein. We will, however, give independent consideration to the remaining points raised by the parties hereto and to the authorities cited.

■■ We will first consider whether the payments made by plaintiffs to the banks were voluntary in nature. Defendants urge that since these various service charges were paid voluntarily they cannot be recovered and therefore the named plaintiffs lack standing to maintain the action. In this regard, defendants rely chiefly upon two decisions of the Supreme Court of Illinois. In *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 85 N.E.200, plaintiff complained to the telephone company about the quality of its service. The company offered an improved service at an increased but unauthorized cost, which plaintiff accepted. After several years, plaintiff sued to recover the amount of the increase. Recovery was denied. The court described the rule as "universally recognized", that where monies are voluntarily paid under a claim of right, with knowledge of the facts by the person making the payment, they cannot be recovered on the ground that the claim was illegal. See 234 Ill. at 541.

■■ Thereafter, in *Mills v. Forest Preserve District*, 345 Ill. 503, 178 N.E.126, the Supreme Court considered a situation in which an owner of land sold it to the condemnor even though he had contended that no legal authority existed for taking the land. After it was established that such authority did not exist, plaintiff tendered return of the purchase price and sought a reconveyance of the land. This relief was denied. The Supreme Court cited its previous decision in *Illinois Glass Co.* The doctrine was described as "well established" that money unlawfully demanded under a claim of authority but without any mistake of fact "* * * may not be recovered unless paid under such pressure as to interfere with the free enjoyment of rights of persons or property * * *." 345 Ill. at 512.

We also find the decision in *Mills* cited with approval in a subsequent decision of this court where a group of plaintiffs in a class suit sought declaratory judgment voiding all traffic ordinances of the city of Chicago as a prelude to attempted recovery of all fines imposed for traffic violations. *Berg v. City of Chicago*, 97 Ill.App.2d 410, 423, 240 N.E.2d 344.

Plaintiffs seek to differentiate *Illinois Glass Co.* on the ground that the decision was influenced by the fact that the parties were *in pari delicto*.

We cannot agree. We believe that recovery was denied in *Illinois Glass Co.* on the theory that the facts of the transaction failed to establish that the payment was involuntary. (See *Fisher v. City of Ottawa*, 8 Ill.App.3d 553, 557, 289 N.E.2d 717.) In *Fisher*, the court affirmed dismissal of a class suit to recover penalties provided by ordinance and paid to the municipality for late payment of water bills. Plaintiffs failed to allege "*  *  * that the payments were made involuntarily as the result of compulsion or duress." 8 Ill.App.3d at 557.

Nor does the differentiation of *Illinois Glass Co.* set out in *Cohon v. Oscar L. Paris Co.*, 17 Ill.App.2d 21, 149 N.E.2d 472, affect its application here. In *Cohon*, this court allowed recovery in a class action by customers of a retailer who had collected and paid occupation taxes for which it was legally not liable which were actually refunded to it by the state. That situation involved not a comparison between the "innocence" of the parties, as plaintiffs here suggest, but proper action by the court to prevent unjust enrichment under equitable principles. (See 17 Ill.App.2d at 26, 27.) As we will later point out, these prime factors are entirely lacking in the case at bar.

■■ Application of the above principle to the allegations of the second amended complaint leads to the conclusion that the payment of the service charge by plaintiffs must be classified as voluntary. This complaint brings out that each of the named plaintiffs had previously purchased renewal license plates directly from the Secretary. It alleged that before the various banks would issue renewal license plates they had "required" payment from the individual plaintiffs and other members of the class. The word "required" falls far short of an allegation of coercion of any kind. Since plaintiffs had previously purchased license plates directly from the Secretary, they knew, or should have known, that the Secretary charged only the statutory fee and no service charge. All of them could have availed themselves of the right to purchase their license plates from the office of the Secretary in Springfield by mail or by means of a personal visit to the offices of the Secretary maintained in Chicago. All of them chose voluntarily to purchase their license plates from a bank. No pressure of any kind against any person, or interference with freedom of action, is alleged in the complaint. The type of situation presented by the second amended complaint is far different from the imposition of an illegal charge by a public official or payment obtained by some type of coercion or duress.

■■ Plaintiffs urge that the question of voluntary payment is a matter of affirmative defense. They cite *Rosen v. Village of Downers Grove*, 19 Ill.2d 448, 167 N.E.2d 230, which has no application here. Since the issue of voluntary payments raised by defendants expressly

appears from the allegations of plaintiffs' own complaint, it was not an affirmative defense. This type of defect, which appears affirmatively from plaintiffs' own pleading, is properly raised by motion to dismiss. Plaintiffs' complaint was "substantially insufficient in law". Ill. Rev. Stat. 1971, ch. 110, par. 45(1).

■■ Nor can we find that the request for temporary injunction by plaintiffs was tantamount to payment under protest so as to defeat the defense of voluntary payment. The pendency of a suit praying for a temporary injunction cannot change the situation that the essence of all these transactions, as being purely voluntary, is established from the allegations of the complaint. Plaintiffs cite decisions from other jurisdictions to the effect that notification orally or by letter that a payment is being made "with reservations" is sufficient to eliminate the defect of voluntary payment. (*Bailey v. Minge,* 16 Ala.App. 269, 77 So. 419; *Davis v. Fowler Bros.,* 20 App.Div. 633, 47 N.Y.S. 221.) They then urge *a fortiori,* but without legal authority, that the filing of suit should also be sufficient. This argument is unavailing since plaintiffs' second amended complaint alleges simply purchase of license plates by them from defendants in a necessarily voluntary manner.

■■ We note also here, and we expressly approve, the theory which appears in *Remittance Agents* that the banks in a situation of this type acted as agents for applicants for motor vehicle license plates who sought out the services of the bank. (See 122 Ill.App.2d at 328 and 329.) This attribute of the transaction is also illustrative of its completely voluntary nature.

Plaintiffs next raise the issue of *ultra vires.* They urge that the defendant banks have no legal authority to engage in the transactions here involved. A question arises as to whether this argument is to be applied to that portion of the transaction in which the bank acts as agent for the Secretary in validating the renewal applications, distributing license plates, accepting the statutory fees and remitting those fees to the Secretary; or, alternatively, whether it applies to the transaction wherein the bank acts as agent for the applicant in issuing the license and in charging and accepting a fee for the services thus rendered. As yet another alternative, does the argument apply to both of these transactions? These questions remain unanswered by plaintiffs.

■■ Upon any analysis, we cannot conclude that the transactions are *ultra vires.* As above shown, *Remittance Agents* held that in these transactions the banks properly acted in a dual capacity and performed duties as agents of the Secretary and also of the various applicants. Aside from following the authority of this former decision, we reach the same conclusion from our own independent thought and analysis. It is

true, as contended by defendants, that the law approves a dual agency relationship where all of the facts are disclosed and where there are no conflicting or inconsistent interests which might possibly impel to a breach of loyalty. This appears amply from a decision of the Supreme Court cited by defendants. (*Adams v. Larson*, 279 Ill. 268, 277-278, 116 N.E. 658.) We will next analyze the transaction in the light of the claim of *ultra vires*.

Considering first application of the argument to national banks here involved, they are creations of and necessarily limited by the provisions of the National Bank Act. (12 U.S.C. sec. 24.) The gist of the matter lies in construction of the wording of the statute granting to national banks "* * * all such incidental powers as shall be necessary to carry on the business of banking * * *." Plaintiffs are correct in the statement that the grant of incidental powers may not be used to enlarge granted powers or to create powers which are withheld either expressly or by reasonable implication. (*Kimen v. Atlas Exchange National Bank of Chicago* (7th cir. 1937), 92 F.2d 615.) A recent decision of the United States Court of Appeals for the first circuit, cited by plaintiffs, throws light upon this problem. (*Arnold Tours Inc. v. Camp* (1st cir. 1972), 472 F.2d 427.) In that case, the Comptroller of the Currency issued a regulation permitting national banks to engage in the travel agency business. The Court of Appeals held that this regulation was beyond the power of the Comptroller and of national banks. The case directly involved construction of the language of the statute above cited concerning "incidental powers". After carefully reviewing a number of pertinent decisions, the court held (472 F.2d at 432):

> "In our opinion, these decisions amply demonstrate that a national bank's activity is authorized as an incidental power, 'necessary to carry on the business of banking,' within the meaning of 12 U.S.C. § 24, Seventh, if it is convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act. If this connection between an incidental activity and an express power does not exist, the activity is not authorized as an incidental power."

■■ The court pointed out that the operation of a travel agency is indeed a highly complex activity. In our opinion, the situation presented by *Arnold Tours* is diametrically opposite to that in the case at bar. In acting as a travel agent, a bank necessarily is obliged to enter a highly competitive business, completely unrelated to banking, for the purpose of making additional profits. Quite to the contrary, in the case at bar, the banks are assisting in the performance of a public service, a large

part of which is intimately connected with the ordinary and traditional banking function of collecting and remitting funds for other parties. Furthermore, the banks perform this function not for the possibility of direct profit, but to attract persons to become familiar with their premises in the hope of expanding their goodwill and thereby their banking business. The activity here involved is in effect akin to advertising, which is no more than an effort to increase goodwill and public acceptance; and, in this manner, to augment the usual business of the bank. In this regard, the activity is convenient and useful to the banks in connection with performance of a recognized and established bank activity pursuant to its express statutory powers. (472 F.2d at 432. See also 9 C.J.S. 1209 on Banks and Banking.) We conclude that the bank activity in the case at bar is not *ultra vires* and not beyond the statutory functions of the national banks.

■■ As regards the state banks here involved, their powers are established and governed by the Illinois Banking Act. (Ill. Rev. Stat. 1971, ch. 16½, par. 101 *et seq.*) The statute authorizes the formation of banks for the purpose of "doing a general banking business." (Par. 103.) The statute also enumerates the general corporate powers of Illinois state banks. (Par. 105.) The crucial words are those used in the phrase "doing a general banking business." These words "are to be used in their common and ordinary sense." (*People v. Wiersema State Bank*, 361 Ill. 75, 88, 197 N.E. 537.) In Illinois, some 35 years ago, our Supreme Court recognized that the trend of "modern decisions" was toward an expansion of the functions of banking. (*Watt v. Cecil*, 368 Ill. 510, 513, 15 N.E.2d 292.) It seems logical from the above analysis regarding national banks that the same result should follow concerning state banks. As above stated, the transactions here are incidental and germane to the carrying on of a general banking business. The transactions here are not *ultra vires* as regards the state banks.

The same result and holding are inherent in the *Remittance Agents* decision. The opinion, there, does not use the term *ultra vires*. However, it clearly holds that the Secretary may authorize banks to engage in these transactions; collection of the service charges by the banks is not violative of public policy or improper and the activities of the banks as agents for the Secretary are not improper. This result was reached by the court after the consideration of extended arguments on the propositions of legality and *ultra vires* advanced by the same attorneys for the *amici curiae* in the former case who are the identical parties, both plaintiffs and defendants, here involved.

■■ There is an additional reason for rejection of this argument of plaintiffs. Defendants have cited persuasive and convincing authority

that parties to an executed transaction may not set it aside by use of the theory of *ultra vires*. As regards the national banks, a helpful decision is *National Bank of Xenia v. Stewart*, 107 U.S. 676, 2 S.Ct. 778, 27 L.Ed. 592. The Supreme Court, there, denied relief to the administrator of a deceased pledgor who had used shares of the bank's own stock as security for a loan. The authority for application of this principle to the state banks is *McNulta v. Corn Belt Bank*, 164 Ill. 427, 45 N.E. 954. There, the court denied relief to an officer of a bank who sued to recover fees from the bank based upon an illegal contract and also denied a counterclaim of the bank for sums previously paid under the void agreement. This principle should be applied to prevent recovery by plaintiffs of all sums heretofore paid to the banks in completely executed transactions. See *People v. Wiersema State Bank*, 361 Ill. 75, 94, 197 N.E. 537.

In a number of places in the argument, plaintiffs discuss the principle of *in pari delicto*. This ancient phrase may be freely translated as meaning in equal fault; or, alternatively, equally culpable. (Black's Law Dictionary, 4th Edition, 898.) Plaintiffs argue that they cannot be *in pari delicto* with the banks because the latter are regulated companies with knowledge of the law which the general public usually lacks. (*Watertown Fire Insurance Co. v. Rust*, 141 Ill. 85, 30 N.E. 772.) Plaintiffs further contend that where the parties are *in pari delicto* the courts will not assist either; but that where transactions are void because of violation of public policy established to regulate one class of citizens for the protection of another, the courts will assist the innocent party.

■■ This type of argument is totally unavailing to plaintiffs. As we will show, and as the court expressly held in *Remittance Agents*, the agreement between the banks and the Secretary and the transactions between the banks and various plaintiffs did not violate the public policy of Illinois in any manner. Further, as above pointed out, the regulated companies, the banks, have not violated the law in any respect in their dealings with the Secretary or with the general public. It should also be apparent that no member of the class, which the named plaintiffs purport to represent, has been guilty of any violation of law. Thus, there is no blame, culpability or illegal conduct on either side of the transactions in question. The theory of *in pari delicto* has no application here.

■■■ One further thought should be expressed in this regard. Plaintiffs here seek equitable relief. In effect, they seek rescission of all executed transactions between themselves and the banks. Plaintiffs wish to be restored to status quo by refund to them of all monies previously paid to the banks. A party who seeks to rescind a contract in this manner must return, or offer to return, the entire consideration which he re-

ceived under the contract so that the other party may be placed in the same position in which he was before the contract was entered into. (*Jackson v. Anderson*, 355 Ill. 550, 555, 189 N.E. 924.) A rescission must be in toto; a party cannot affirm a contract in part and repudiate it in part; he cannot accept the benefits on the one hand while he shirks its disadvantages on the other. (*Downing v. Harris Trust & Savings Bank*, 318 Ill. 323, 326, 149 N.E. 256.) There is no method by which plaintiffs can do equity by restoring the defendant banks to status quo. Basic equitable principles thus prohibit the granting of this portion of the requested relief.

Plaintiffs attempt to make the situation at bar appear as though strong equities favor recovery by plaintiffs and that, conversely, it would be inequitable for the banks to retain the sums paid to them. We find no equities in support of plaintiffs' position and no equitable considerations which would condemn the conduct of the banks or which would prevent their retention of monies received. Plaintiffs and all members of the class they describe acted in good faith and voluntarily. The purchase of license plates from banks has steadily increased. During 1969, approximately 1,000,000 license plates were sold through Illinois banks. Apparently the convenience of this method of obtaining plates has met with public approval and acceptance.

■■ Plaintiffs and members of the class were beneficiaries of this convenience in return for the nominal fee they paid the banks. Now, without the ability of placing the banks in status quo and returning that which they were given in good faith, this litigation seeks in effect to rescind these transactions and to recover the entire consideration. On the other hand, the banks purchased the necessary validating machine, sent employees to the Secretary for training, expended some considerable time and effort in obtaining and distributing license plates and collecting and remitting the necessary funds. There is no allegation by plaintiffs that the banks have made any profit from these transactions and no claim or allegation that the amount charged was excessive. It would be highly inequitable to require the banks to refund the service charges received by them.

■■■ Plaintiffs urge that the agreements between them and various banks for payment of a service charge were void as contrary to public policy and that granting of recovery to plaintiffs by this court would advance the enforcement of public policy. "The public policy of a State is to be found embodied in its constitution and its statutes. When these are silent upon the subject, then in the decisions of its courts." (*People v. Wiersema State Bank*, 361 Ill. 75, 86, 197 N.E. 537. See also *Balasa v. Balasa*, 11 Ill.App.2d 103, 108, 136 N.E.2d 594.) Undoubtedly it is of

paramount importance that this public policy, once ascertained, should be protected and furthered by the courts whenever possible. The issue here, however, is whether this type of transaction between the banks and the plaintiffs is contrary to public policy.

■■ It would seem that the public policy of Illinois does not require that the sale of renewal license plates for passenger motor vehicles should be confined and restricted to the Secretary himself. On the contrary, the legislature of Illinois has created a system whereby these license plates may be sold by remittance agents duly licensed and acting under the authority of the Secretary. The statute specifically gives the Secretary the right to prescribe the maximum service charge which may be imposed upon an applicant for renewal of a motor vehicle registration by any person authorized by law to receive renewal applications and fees. (Ill. Rev. Stat. 1971, ch. 95½, par. 3—821(b).) The agreements entered into between the Secretary and the banks contain regulatory provisions quite similar to the statutory requirements for remittance agents. Since the Secretary is expressly authorized to delegate to remittance agents the authority to issue renewals and receive service charges, it would logically seem that delegation of a similar duty under similar safeguards to duly constituted banks operating under state or federal supervision and regulation would be in accordance with public policy.

■■ In addition, we revert once more to the holding of the *Remittance Agents* case. There, the court expressly held that the type of agreement involved in the case at bar can properly be entered into by the Secretary, "* * * since it is not prohibited by law and no public policy we are aware of positions it beyond the pale." (122 Ill.App.2d at 327.) The court further pointed out that the fees charged by the banks to the applicants are proper because the bank when charging its nominal fee does so as an agent of the applicant who is the one who pays these charges. The court pointed out that the Secretary and his employees are expressly prohibited from charging any applicant more than the statutory amount but that, "* * * these prohibitions are as nothing to a bank when charging a fee of an applicant for its services as his agent in processing his application for plates." See 122 Ill.App.2d at 328.

■■ Plaintiffs urge that in some manner their suit is a vehicle for social justice and for vindication and enforcement of public policy. We cannot find in this record any basis for such an argument. Other than the named plaintiffs, the general public seems to approve and to make use of the privilege of obtaining their vehicle licenses from banking outlets. We see no legal, equitable, social or moral wrong resulting from serving public convenience in this manner.

All counsel on both sides of this controversy have assisted the court

with ably written briefs citing literally scores of decisions. Not only would we be unable to deal with each of these precedents in an opinion of reasonable length, but we find this to be unnecessary in view of the analysis and conclusions above set forth.

■■■ Point IV in plaintiffs' reply brief raised for the first time the contention that the activities of the Secretary in authorizing issuance of licenses by the banks violate the fourteenth amendment to the Constitution of the United States, and Article II, sec. 1, as well as Article V, sec. 16 of the Illinois Constitution of 1970. These issues were not raised by plaintiffs in their initial briefs in this court. This practice is contrary to the rules. (Ill. Rev. Stat. 1971, ch. 110A, par. 341(g).) In addition, we may not consider these constitutional questions because they were never presented to and decided by the trial court. (*Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 970, 282 N.E.2d 452 (leave to appeal denied September 28, 1972) and authorities therein cited.) For this reason, it is unnecessary for us to entertain the motion made by defendants to strike this portion of the reply brief of plaintiffs.

■■ All parties have devoted considerable time and effort in connection with the discussion of cases bearing upon the right of plaintiffs to maintain this suit as a class action. Since we have held that plaintiffs have no individual cause of action, it would follow necessarily that any attempted class action must fail. See *De Phillips v. Mortgage Associates, Inc.,* 8 Ill.App.3d 759, 764, 291 N.E.2d 329.

We conclude that the trial court properly dismissed this suit with prejudice.

Judgment affirmed.

EGAN and HALLETT, JJ., concur.