THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID THURMAN, Defendant-Appellant.

First District (4th Division)    No. 1—00—2841

Opinion filed March 13, 2003.—Rehearing denied April 16, 2003.

Michael J. Pelletier and Debra Loevy-Reyes, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Eve Reilly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner David Thurman appeals from an order of the circuit court granting the State's motion to dismiss his postconviction petition. On appeal, petitioner contends that he was denied a fair trial when one of the State's witnesses received leniency in exchange for his cooperation and the State failed to correct the witness's testimony to the contrary.

Following a bench trial, petitioner was found guilty of three counts of first-degree murder, armed robbery, armed violence and two counts of aggravated assault arising from the 1990 killing of Gonzalo Vega (the victim). The circuit court sentenced petitioner to natural life in prison for first-degree murder, 30 years in prison for the armed robbery and the armed violence convictions and three years for the aggravated assault convictions, to be served concurrently. Petitioner's convictions and sentences were affirmed on direct appeal. *People v. Thurman*, Nos. 1—92—1960 & 1—92—3312 cons. (1994) (unpublished order under Supreme Court Rule 23).

At trial, Pascual Alvarez, the victim's cousin, testified on behalf of the State on August 27, 1992. According to Alvarez, he and the victim were drinking with eight or nine other men at a friend's house on the evening of July 26, 1990. The victim, Alvarez, Mike Aguilar, Mark Hernandez and Steven Lavin subsequently drove to a liquor store. Alvarez went into the liquor store while the victim crossed the street and went to cash a check at a currency exchange. When Alvarez left the liquor store, he saw the victim crossing Lake Street. Alvarez heard a gunshot after he got back into the car and saw the victim on the ground in front of a day-care center. Petitioner was crouching down next to the victim and had a gun in his hand pointed towards the victim's chest. Alvarez got out of the car and shouted at petitioner, "[d]on't shoot him *** [y]ou already shot him." Alvarez crouched down in front of the car, and when he looked up, petitioner was going through the victim's pockets. Petitioner pointed the gun at Alvarez and subsequently fired a shot in his direction. Alvarez went into the liquor store to ask for help, and when he came out, petitioner was running northbound.

On cross-examination, Alvarez testified that he was still in the custody of the sheriff because of an error with his paperwork. Alvarez denied that he was promised anything by the State in exchange for his testimony against petitioner.

Michael Aguilar testified that on the evening of July 26, 1990, he, the victim, Alvarez and another man drove to a liquor store. The victim went to a nearby currency exchange to cash a check while Alvarez went into the liquor store to buy some beer. Immediately after

Alvarez returned to the car, he shouted, "Gonzalo is in trouble, Gonzalo got shot." Alvarez began to run across the street and Aguilar followed him. Alvarez crouched down to the ground after a man with a gun shot at him. Aguilar did not get a good look at the shooter and could not positively identify him.

Armando Alanis testified that he and the victim were friends. On the evening of July 26, 1990, Alanis was in his car at a stoplight when he observed petitioner and the victim in front of a day-care center and heard the two men arguing. Alanis heard a gunshot while he was driving through the intersection. He immediately pulled his car over and grabbed a stick that he kept in his car. Alanis then saw petitioner shoot at the victim and go through his pockets. He also saw petitioner shoot at Alvarez. He chased petitioner through a nearby alley and stopped after petitioner fired two shots at him.

Chicago police detective Richard Curley testified that on August 22, 1990, he interviewed petitioner regarding a matter unrelated to this case. Petitioner subsequently directed Detective Curley and his partner to a McDonald's parking lot in Maywood. Detective Curley searched the area adjoining the parking lot and recovered a loaded .38-caliber revolver. Petitioner identified the revolver and told Detective Curley that he had thrown the gun there.

Donald Smith, a forensic scientist and firearms expert, subsequently compared a fired bullet recovered from the crime scene in this case on July 26, 1990, with the gun recovered by Detective Curley from the parking lot in Maywood. According to Smith, the bullet from the crime scene could have been fired only from the revolver recovered by Detective Curley.

Petitioner filed a *pro se* petition for postconviction relief on June 2, 1995, raising numerous contentions. The circuit court appointed postconviction counsel who filed a supplemental petition on March 24, 2000, alleging, in pertinent part, that petitioner was denied effective assistance of trial and appellate counsel, and that petitioner was denied a fair trial because the State failed to notify the court and the defense that Alvarez received leniency in exchange for his testimony at trial. Attached to the petition were the partial transcripts of two hearings from August 1992 involving charges of criminal misdemeanor damage to property that were brought against Alvarez, an August 28, 1992, sentencing order, and a sheet that contained Alvarez's criminal history. The State successfully moved to dismiss the supplemental petition.

On appeal, petitioner contends that the circuit court erred in granting the State's motion because he was denied a fair trial when Alvarez gave false testimony regarding the leniency he received in

exchange for his cooperation with the State, and the State failed to correct Alvarez's testimony.

■ The circuit court's decision to deny a postconviction evidentiary hearing is reviewed *de novo. People v. Coleman*, 183 Ill. 2d 366, 701 N.E.2d 1063 (1998) (*Coleman*).

■ A petitioner does not have an automatic right to an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381. An evidentiary hearing is warranted only when the allegations of the postconviction petition, supported when necessary by the record or accompanying affidavits, makes a substantial showing that the petitioner's constitutional rights have been violated. *People v. Barrow*, 195 Ill. 2d 506, 749 N.E.2d 892 (2001) (*Barrow*). For the purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits must be taken as true. *People v. Mahaffey*, 194 Ill. 2d 154, 742 N.E.2d 251 (2000).

■ Evidence of an understanding or an agreement between a witness and the State as to any future prosecution is a factor that is relevant to the witness's credibility of which the trier of fact should be informed. *People v. Diaz*, 297 Ill. App. 3d 362, 696 N.E.2d 819 (1998) (*Diaz*). Likewise, it is well established that the State's knowing use of perjured testimony to obtain a criminal conviction violates the defendant's right to due process of law. *People v. Olinger*, 176 Ill. 2d 326, 680 N.E.2d 321 (1997); see also *Giglio v. United States*, 405 U.S. 150, 153, 31 L. Ed. 2d 104, 108, 92 S. Ct. 763, 766 (1972) (*Giglio*); *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177 (1959) (*Napue*). A conviction obtained by the knowing use of false testimony must be set aside if there is a reasonable likelihood that the false testimony could have affected the verdict. *Barrow*, 195 Ill. 2d at 530. These principles also apply when the State, while not soliciting false testimony, allows it to go uncorrected when it occurs. *Barrow*, 195 Ill. 2d at 530.

■ Here, a review of the documents attached to the supplemental petition shows that Alvarez pled guilty on August 20, 1992, to two counts of Class A misdemeanor criminal damage to property in violation of sections 21—1(1)(a) and 21—1(1)(h) of the Criminal Code of 1961 (Code) (720 ILCS 5/21—1(1)(a), (1)(h) (West 1992)), for acts Alvarez committed on February 23, 1992. The sentence for a Class A misdemeanor at that time was limited to a term of less than one year in jail. 730 ILCS 5/5—8—3(a)(1) (West 1992). On August 20, 1992, the circuit court sentenced Alvarez to one year's conditional discharge, including 160 hours of community service, and 6 days in jail, which was time considered served. On August 27, 1992, the court modified the original sentencing order and dropped the 160 hours of community

service to reflect that Alvarez satisfied that requirement by serving seven days in jail. This is consistent with Alvarez's testimony at petitioner's trial on August 27, 1992, that he was still in custody on that date because of a mistake with his paperwork.

Petitioner contends that these documents support his claim that the community service requirements contained in the original sentencing order were dropped because Alvarez cooperated with the State and testified that petitioner was responsible for the victim's murder. Contrary to petitioner's speculation of leniency, the record reveals that Alvarez viewed a lineup on September 20, 1990, more than one year prior to committing the acts to which he pled guilty, and positively identified defendant as the man who shot the victim. The record further reveals that on January 3, 1991, again more than one year prior to the time he committed the relevant offenses, Alvarez was placed by the State on its list of potential witnesses in this case. Alvarez's modified sentence was not unlawful under the Code, and the seven additional days that he spent in jail were greater than the 160 hours of community service to which he was originally sentenced. See *People v. Jimerson,* 166 Ill. 2d 211, 652 N.E.2d 278 (1995) (where one of the considerations in determining whether there was a deal between the State and one of its witnesses was the ultimate disposition of the witness's criminal case).

Moreover, unlike *Giglio, Napue,* and *Diaz,* relied upon by petitioner, there was overwhelming evidence in this case other than Alvarez's testimony which linked petitioner to the crime. Alanis testified that on the evening of July 26, 1990, petitioner and the victim were having an argument, that petitioner went through the victim's pockets, that he witnessed petitioner shoot at the victim and Alvarez, and that petitioner also fired a shot at Alanis when he chased petitioner through an alley. Alanis displayed no hesitancy in identifying petitioner as the perpetrator at trial and previously had identified petitioner in a lineup. Although Aguilar was unable to positively identify petitioner, his testimony largely corroborated the testimony of Alvarez and Alanis concerning the circumstances surrounding the crime.

Finally, one of the fired bullets recovered from the crime scene in this case was positively linked to the .38-caliber revolver that petitioner directed Detective Curley to in Maywood on August 22, 1990. Therefore, even assuming that Alvarez received consideration in exchange for his testimony, and the State failed to disclose it, it is unreasonable to conclude that Alvarez's uncorrected testimony to the contrary affected the outcome of this case. See, *e.g., People v. Williams,* 332 Ill. App. 3d 254, 773 N.E.2d 143 (2002) (where even assum-

ing that the State's witness who testified against the defendant in a murder prosecution had received a reduced sentence in exchange for his cooperation, and the State failed to disclose it, the alleged uncorrected false testimony did not affect the verdict).

For all the foregoing reasons, the circuit court properly granted the State's motion to dismiss the postconviction petition.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.