THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BOWMAN, Defendant-Appellee.

First District (3rd Division)   No. 1—04—0253

Opinion filed April 20, 2005.—Rehearing denied May 18, 2005.

Samuel V.P. Banks and Marc W. Martin, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Michelle E. Feola, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

Following a jury trial, defendant James Bowman was convicted of reckless homicide and aggravated driving under the influence of alcohol. He was sentenced to 14 years' imprisonment for reckless homicide and 12 years' imprisonment for aggravated driving under the influence, to run concurrently. Defendant now appeals and argues: (1) the trial court erred in giving a modified jury instruction; (2) the trial court erred in allowing photographs to be published to the jury; (3) he was denied his right to a fair trial; (4) the trial court erred in allowing opinion testimony; (5) the State made improper comments during closing argument; (6) the State failed to correct the false testimony of an eyewitness; and (7) the trial court erred in imposing the maximum extended-term sentence. For the following reasons, we affirm the judgment of the trial court.

## BACKGROUND

The evidence at trial established that on May 21, 2001, at approximately 1 p.m., Rosario Cruz walked his three-year-old grandson, Alexander Esteban, to preschool located in the 1400 block of West Augusta Boulevard. When they arrived at the corner of Augusta Boulevard and Noble Street, the eastbound traffic on Augusta Boulevard had a green light. They waited for the light to change so they could cross Augusta Boulevard. When the light turned red and the walk signal appeared, Rosario and Alexander, walking hand-in-hand, proceeded to cross the street. When they reached the center of the eastbound lane, defendant's white pickup truck went through the red light and knocked Rosario and Alexander to the ground. After running the red light on Augusta Boulevard and hitting Rosario and Alexander, defendant continued to travel eastbound on Augusta Boulevard. An ambulance arrived and transported Rosario to the hospital, where he was treated for three broken ribs and a head laceration. Alexander was taken by ambulance to Children's Memorial Hospital, where he died from multiple injuries.

Martin Hernandez was driving the car directly behind defendant and was approximately 50 feet behind defendant's truck when he saw defendant run the red light. Hernandez saw two bodies lying in the intersection. Hernandez continued to follow defendant eastbound on Augusta beeping his horn in an attempt to get defendant to stop his truck. Defendant did not stop until he reached the intersection of Augusta Boulevard and Milwaukee Avenue, where he hit a red Jeep. Hernandez then witnessed defendant back up 10 to 15 feet and hit the Jeep again before stopping.

The driver of the Jeep, Jeremiah Flaherty, and Hernandez both got out of their cars and approached the driver's side of defendant's truck. Hernandez yelled at defendant, who did not respond. Hernandez then removed the keys from the ignition of the truck and helped defendant out. Hernandez testified that defendant's eyes appeared "red" and "kind of lazy." Flaherty testified that after defendant exited the truck, he observed defendant walk toward him. As he approached, defendant "said he was sorry." Defendant's speech was "kind of slurred," his "eyes were bloodshot" and he appeared to be "kind of out of it." He further described defendant's gait as "stiff" and slightly "off center." Flaherty did not smell alcohol, but opined that defendant was under the influence.

Officer Owen Vasquez of the Chicago police department arrived on the scene at approximately 1:10 p.m. He observed another officer helping defendant to the sidewalk. Officer Vasquez observed that defendant "was staggering" and "needed support for walking." Officer Vasquez

also observed that defendant had "red eyes" and that his face was flushed. Defendant had a strong odor of alcohol on his breath and was unable to retrieve his wallet out of the rear pocket of his jeans.

After he spoke with witnesses at the scene, Officer Vasquez administered field performance tests to defendant. Officer Vasquez testified that defendant failed the one-legged stand/balance and walk-and-turn tests. Defendant also could not complete the finger-to-nose test. Officer Vasquez did not administer the horizontal gaze nystagmus test, which is recognized as the most accurate field sobriety test.

After observing defendant for 30 minutes, Officer Vasquez believed that defendant was under the influence of alcohol and placed defendant under arrest. While he was transporting defendant to the 13th District police station, Officer Vasquez noted a strong odor of alcohol coming from defendant. When they arrived at the police station, Officer Vasquez had to assist defendant in walking the 12 to 15 feet to the interview room. Defendant declined the opportunity to take a breath test and no chemical tests were performed.

After hearing all of the evidence, a jury found defendant guilty of reckless homicide, aggravated reckless homicide and aggravated driving under the influence. The trial court subsequently sentenced defendant to 14 years' imprisonment for reckless homicide and 12 years' imprisonment for aggravated driving under the influence, to run concurrently. This appeal followed.

## ANALYSIS

Defendant first contends that he was denied his constitutional rights to due process and trial by jury when the court gave a nonpattern jury instruction that presupposed defendant's guilt.

■ Jury instructions are necessary to provide the jury with the legal principles applicable to the evidence presented so that it may reach a correct verdict. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). Supreme Court Rule 451(a) (177 Ill. 2d R. 451(a)) provides that whenever the Illinois Pattern Jury Instructions (IPI) contain an applicable jury instruction and the court determines that the jury should be instructed on the subject, "the [IPI instruction] shall be used unless the court determines that it does not accurately state the law." Where no IPI instruction exists on a subject that the court determines the jury should be instructed on, the court has the discretion to give a nonpattern jury instruction. *People v. Ramey*, 151 Ill. 2d 498, 536, 805 N.E.2d 1190, 1194 (1992). Absent an abuse of discretion, we will not disturb the trial court's decision to instruct a jury using a nonpattern instruction. *People v. Pollock*, 202 Ill. 2d 189, 211, 780 N.E.2d 669, 682 (2002). Whether a court has abused its discretion in giving a nonpattern

instruction will depend on whether that instruction was accurate, simple, brief, impartial and a nonargumentative statement of the applicable law. 177 Ill. 2d R. 451(a); *Pollock*, 202 Ill. 2d at 211, 780 N.E.2d at 682.

A nonpattern jury instruction was necessary in this case given the United States Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. In this case, the State was seeking to extend the penalty for the crimes charged beyond the statutory maximum. Consequently, the State offered modified versions of Illinois Pattern Jury Instructions, Criminal, Nos. 2.01 and 26.01 (4th ed. 2000) (hereinafter IPI Criminal 4th), as well as special verdict forms as part of its proposed jury instruction in an effort to comply with the ruling in *Apprendi*. *People v. Hester*, 131 Ill. 2d 91, 103, 544 N.E.2d 797, 803 (1989) (the use of modified or nonpattern instructions is authorized when the pattern instructions do not accurately state the law). The defense objected to these modified instructions on the ground that they presupposed defendant's guilt. The instructions were given over the defense objection. The instructions read:

> "The State has also alleged the additional facts that, during the commission of the offense, Alexander Esteban was under the age of twelve, and that Rosario Cruz was sixty years of age or older. I.P.I. Criminal No. 2.01 (Modified) *Apprendi v. New Jersey*, 530 U.S. 466, 102 S. Ct. 2348 (2000).
>
> If you find the defendant guilty of reckless homicide, aggravated reckless homicide or both, you should continue your deliberations to determine whether the State has proven beyond a reasonable doubt the fact that, during the commission of the offense, Alexander Esteban was under the age of 12.
>
> * * *
>
> If you find the defendant guilty of aggravated driving under the influence of alcohol, you should continue your deliberations to determine whether the State has proven beyond a reasonable doubt the fact that, during the commission of the offense, Rosario Cruz was 60 years of age or older. I.P.I. Criminal No. 26.01 (Modified) *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000)."

Defendant claims that the jury instructions given violated his right to due process and a trial by jury because the instructions contained an impermissible mandatory presumption that defendant was guilty of the offenses charged.

The due process clause of the fourteenth amendment of the United States Constitution requires the State to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2787 (1979). The State may rely on presumptions and inferences in establishing a defendant's guilt in certain circumstances. *County Court v. Allen*, 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213, 2224 (1979). A presumption is a legal device that either permits or requires the fact finder to assume the existence of an ultimate fact, after basic or predicate facts have been established. *People v. Pomykala*, 203 Ill. 2d 198, 203, 784 N.E.2d 784, 787 (2003).

■ Presumptions may be classified as mandatory or permissive. *People v. Watts*, 181 Ill. 2d 133, 142, 692 N.E.2d 315 (1998). A mandatory presumption is one in which the fact finder is required to accept the presumption. *Watts*, 181 Ill. 2d at 142, 692 N.E.2d at 320. A permissive presumption is one where the fact finder is free to infer the existence of the ultimate or presumed fact upon proof of the predicate fact. *Pomykala*, 203 Ill. 2d at 203, 784 N.E.2d at 787.

The United States Supreme Court has held that mandatory conclusive presumptions are unconstitutional because such presumptions directly conflict with the presumption of innocence. *Sandstrom v. Montana*, 442 U.S. 510, 523, 61 L. Ed. 2d 39, 50, 99 S. Ct. 2450, 2459 (1979). Similarly, the Supreme Court has held that mandatory rebuttable presumptions that shift the burden of persuasion to the defendant are *per se* unconstitutional as they negate the State's burden to prove every element of a crime beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459. Our supreme court has subsequently held that mandatory rebuttable presumptions that shift the burden of production to the defendant are also unconstitutional. *Watts*, 181 Ill. 2d at 147, 692 N.E.2d at 319. As a result, all mandatory presumptions are now considered to be *per se* unconstitutional under Illinois law. *Pomykala*, 203 Ill. App. 3d at 204, 784 N.E.2d at 788.

In the case at bar, defendant argues that the language in the modified version of IPI Criminal 4th No. 2.01 ("The State has also alleged the additional facts that, during the commission of the offense, Alexander Esteban was under the age of twelve, and that Rosario Cruz was sixty years of age or older. IPI Criminal No. 2.01 (Modified) *Apprendi v. New Jersey*, 530 U.S. 466, 102 S. Ct. 2348 (2000)") contains a mandatory presumption that he was guilty of the offenses charged. Defendant argues that the presumption is essentially a direction from the judge that defendant had committed the offense.

The State counters that the language "during the commission of

the offense" in the instruction is not a mandatory presumption but, rather, a permissive presumption that allows, but does not require, the fact finder to make an inference. The State suggests that IPI Criminal 4th No. 26.01, as modified in this case, provides that the jury is to consider whether there were additional factors present "during the commission of the offense" *if* the jury first finds defendant guilty of the specific offense. We agree.

In *Hester*, the defendant was tried for reckless homicide. *Hester*, 131 Ill. 2d at 100-01, 544 N.E.2d at 802. The jury was given a nonpattern instruction concerning the finding of intoxication. Specifically, the jury was instructed that it "may presume" that defendant was under the influence of intoxicating liquors if defendant's blood alcohol was .10% or more, but that the presumption was "not binding." *Hester*, 131 Ill. 2d at 100-01, 544 N.E.2d at 802. Our supreme court found that a reasonable juror could only interpret the instruction as being permissive because the jurors were free to either accept or reject the presumption. *Hester*, 131 Ill. 2d at 101, 544 N.E.2d at 802.

Conversely, in *Pomykala*, defendant was convicted of reckless homicide after his vehicle hit an oncoming vehicle while he was driving under the influence of alcohol. A nonpattern jury instruction was given based on section 9—3(b) of the Criminal Code of 1961 (Code) (720 ILCS 5/9—3(b) (West 2000)). The instruction stated that if the jury found that the defendant was operating his vehicle under the influence of alcohol at the time of the accident, it was to presume that the defendant acted recklessly unless disproved by contrary evidence. *Pomykala*, 203 Ill. 2d at 202, 784 N.E.2d at 787. The statute provided:

> " 'In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary.' " *Pomykala*, 203 Ill. 2d at 202, 784 N.E.2d at 787, quoting 720 ILCS 5/9—3(b) (West 2000).

In resolving the defendant's challenge to the constitutionality of section 9—3(b), our supreme court looked at a prior version of section 9—3(b), which read:

> " 'In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act.' " *Pomykala*, 203 Ill. 2d at 204, 784 N.E.2d at 788, quoting Ill. Rev. Stat. 1991, ch. 38, par. 9—3(b).

The court remarked that, in amending the statute, the legislature left out the term *"prima facie"* and instead incorporated the definition of *"prima facie."* The court went on to find that section 9—3(b), as amended, contained an unconstitutional mandatory presumption

because the definition of *"prima facie"* as included necessitated "a finding of recklessness without any factual connection between the intoxication and the reckless act, unless this presumed connection is disproved." *Pomykala*, 203 Ill. 2d at 208, 784 N.E.2d at 790.

■ Given the fact that we are to view jury instructions as a whole (*Francis v. Franklin*, 471 U.S. 307, 315, 82 L. Ed. 2d 344, 354, 105 S. Ct. 1965, 1971 (1985)), we find the instruction given in the case at bar more similar to that given in *Hester* than *Pomykala*. The wording in the instructions here allows, but does not require, a juror to find defendant guilty of the offenses charged. The use of the term "alleged" in IPI Criminal 4th No. 2.01 makes it clear that the State needed to prove that when the offense occurred, the victims were under the age of 12 and 60 years or older. The ages of the victims were facts that the State sought to prove beyond a reasonable doubt in addition to proving that defendant committed the offense as charged. Likewise, the instructions clearly state that "if" the jury were to find defendant guilty of reckless homicide, it must consider whether the State has proven that Alexander was under the age of 12 and Rosario was 60. Consequently, the jury instruction was a permissive one.

■ Defendant next argues that the trial court erred in allowing highly prejudicial crime scene photographs of Rosario and Alexander and autopsy photographs of Alexander to be published to the jury. Defendant suggests that these photographs were irrelevant and unfairly prejudicial.

Photographs of a decedent may be admitted to prove the nature and extent of the injuries and the force needed to inflict them, the position, condition and location of the body, and the manner and cause of death, to corroborate a defendant's confession, and to aid in understanding the testimony of a pathologist or other witness. *People v. Kitchen*, 159 Ill. 2d 1, 34, 636 N.E.2d 433, 448 (1994). While photographs may sometimes be cumulative of the testimony of a witness, photographs may also aid the jury in understanding the testimony. *People v. Chapman*, 194 Ill. 2d 186, 220, 743 N.E.2d 48, 67 (2000). If photographs are relevant to prove facts at issue, the photographs are admissible unless their nature is so prejudicial and so likely to inflame the jury that their probative value is outweighed. *Kitchen*, 159 Ill. 2d at 35, 636 N.E.2d at 448. The decision to admit photographs into evidence is a matter left to the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. *Kitchen*, 159 Ill. 2d at 34, 636 N.E.2d at 448.

The challenged photos that are the subject of this appeal were unfortunately not included in the record before us. As the appellant, defendant has the burden to provide a sufficiently complete record to

support a claim of error, and any doubts that arise from the incompleteness of the record will be resolved against defendant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 759 N.E.2d 958, 959 (1984); *People v. Fair*, 193 Ill. 2d 256, 264 (2000). Consequently, we are unable to determine whether the trial court abused its discretion in admitting the crime scene and autopsy photographs.

■ Defendant next claims that his right to a fair trial was denied as a result of aggravating sentencing factors being litigated at trial.

Section 5—5—3.2(b)(4)(i) of the Unified Code of Corrections (Corrections Code) allows the court to impose an extended-term sentence when the victim is under the age of 12. 730 ILCS 5/5—5—3.2(b)(4)(i) (West 2002). Likewise, the Corrections Code allows the court to impose an extended-term sentence when the victim is 60 years old or older. 730 ILCS 5/5—5—3.2(b)(4)(ii) (West 2002). The aggravating sentencing factors that the State sought to prove were: (1) Alexander Esteban was under the age of 12; and (2) Rosario Cruz was 60 years old. Given the recent holding in *Apprendi*, the State was required to submit these factors to the jury and prove them beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Defendant suggests that these factors were improperly introduced at trial and should have been litigated in a trial or hearing separate from the guilt/innocence phase of trial. We find no authority for such a bifurcated trial. The Court in *Apprendi* did not address the necessity of a bifurcated trial to prove extended-term sentencing factors. While we recognize that the Arizona Court of Appeals (see *State v. Benenati*, 203 Ariz. 235, 241, 52 P.3d 804, 810 (App. 2002); *State v. Nichols*, 201 Ariz. 234, 238, 33 P.3d 1172, 1176 (App. 2001)), has ruled that *Apprendi* factors should be tried at a bifurcated hearing, we are not bound by that authority. *Corbett v. Devon Bank*, 12 Ill. App. 3d 559, 567, 299 N.E.2d 521, 525 (1973). Even if we were to agree that a bifurcated trial was necessary in some cases to prove extended-term sentencing factors so as not to prejudice defendant at the guilt/innocence phase of trial, a bifurcated trial would not be necessary in this case where the extended-term factors the State sought to prove were merely the ages of the victims. Similar to the way prior convictions are proven, one's age can be proven by a certified copy of a birth certificate. Defendant has failed to indicate how he was prejudiced by this procedure.

■ Defendant also maintains that the trial court erred when it allowed Martin Hernandez and Jeremiah Flaherty to opine that defendant was intoxicated, where the State failed to provide a sufficient foundation for such opinions.

Lay persons may express their opinion on the question of intoxica-

tion, if their opinion is based on their personal observation of and experience with intoxication. *People v. Lawson*, 86 Ill. App. 3d 376, 397, 407 N.E.2d 899, 916 (1980). A trial court has the discretion to decide whether evidence is relevant and admissible and that decision will not be disturbed absent a clear abuse of discretion that results in prejudice to the defendant. *People v. Ward*, 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 701 (1984). A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Beck*, 295 Ill. App. 3d 1050, 1061, 693 N.E.2d 897, 904 (1998).

Martin Hernandez testified that he observed defendant run a red light, hit Rosario and Alexander and continue eastbound on Augusta Boulevard to Milwaukee Avenue, where he hit Flaherty's Jeep. Hernandez then got out of his car and went to defendant's car door and "screamed" at defendant. Defendant did not acknowledge him. Hernandez observed defendant both in and out of the car. Defendant's eyes were "red" and "kind of lazy." Hernandez also testified that he had seen and been around people who were drinking and were intoxicated "hundreds" of times. Although Hernandez testified that he did have an opinion as to whether defendant was under the influence of alcohol on May 21, 2001, he never gave an opinion.

Jeremiah Flaherty testified defendant hit the rear end of his Jeep, backed up and hit the rear end a second time. After defendant exited his vehicle, he walked toward Flaherty. Defendant walked "stiff" and "off center," his eyes were "bloodshot" and his speech was "slurred." Flaherty observed defendant for about two minutes. Flaherty testified that he worked as a bartender three nights a week and as a doorman at a bar. As a result of his employment, he was familiar with the characteristics of somebody under the influence of alcohol, and he estimated that he had seen "a thousand" people under the influence. Based on his observations of defendant on May 21, 2001, and his previous personal experience, Flaherty opined that defendant was under the influence of alcohol on May 21, 2001.

After reviewing the record in the instant case, we disagree with defendant's assertion that the trial court allowed improper opinion testimony. Both Hernandez and Flaherty testified that they had numerous experiences with persons under the influence of alcohol. Furthermore, while Flaherty opined that defendant was under the influence, Hernandez never gave an opinion about whether he believed defendant to be under the influence of alcohol. Their testimony was proper based on their own personal experience and observations. Therefore, we find that the trial court did not abuse its discretion in allowing this testimony.

■ Defendant next asserts that the State made improper comments during closing argument regarding defense counsel's unethical conduct. The State argues that the comments made regarding defense counsel were in no way improper, but if this court were to find them improper, the remarks did not result in substantial prejudice to defendant and, therefore, do not merit reversal of defendant's conviction.

During closing argument, defense counsel read the indictment to the jury which included a reference to the extended-term sentence for which defendant was eligible. Defense counsel stated:

> "Now, he unintentionally without legal justification, while driving a motor vehicle, to wit an automobile, recklessly performed acts in such a manner as were likely to cause death or great bodily harm to some individual, and such acts caused the death of Alexander Esteban, to wit James Bowman drove while under the influence of alcohol to a degree that rendered him incapable of safely driving and the State shall seek-listen to this now."

The State objected to defense counsel's reference to an extended-term sentence and the trial court overruled the objection. Defense counsel went on to state:

> "This is what the State is asking you to do. They are asking you to find him guilty, not only find him guilty, and then the State shall seek an extended term sentence, in that the offense was committed against a person the age of 12 at the time of the offense in violation of Chapter 720. That's what they're asking you to do based on this evidence that you heard."

During rebuttal closing argument the State remarked:

> "And counsel implored you in his closing argument. Consider the sentence he says. You know what? It's improper. You may not consider the potential sentence in this case. That's up to the judge. It is improper for you as jurors to do that."

Defendant claims that the State's remarks above amount to an improper accusation that defense counsel engaged in unethical conduct.

Prosecutors are afforded wide latitude in closing argument, and even improper remarks do not merit reversal unless they result in substantial prejudice to the defendant. *Kitchen*, 159 Ill. 2d at 38, 636 N.E.2d at 448. Closing arguments must be viewed in their entirety, and remarks must be viewed in context. *Kitchen*, 159 Ill. 2d at 38, 636 N.E.2d at 448. In closing argument, the prosecutor may respond to comments made by defense counsel which clearly invite response. *People v. Rader*, 178 Ill. App. 3d 453, 466, 532 N.E.2d 1365, 1372-73 (1988). A trial court's determination regarding the propriety of closing arguments will not be disturbed absent an abuse of discretion. *People v. Byron*, 164 Ill. 2d 279, 295, 647 N.E.2d 946, 954 (1995).

Initially, we find that defendant's argument is waived. Defendant did not object to the State's remarks at trial. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988) (issues not raised at trial and included in a posttrial motion are waived for purposes of review). Waiver aside, defendant's argument is based on an extremely strained characterization of the State's remarks. A review of the record in this case reveals that when the State used the word "improper," it was referring to the jury's consideration of the potential sentence and not in reference to defense counsel. Defendant's reliance on *People v. Kidd*, 147 Ill. 2d 510, 591 N.E.2d 431 (1992), *People v. Emerson*, 97 Ill. 2d 487, 455 N.E.2d 41 (1983), *People v. Monroe*, 66 Ill. 2d 317, 362 N.E.2d 295 (1977), and *People v. Beringer*, 151 Ill. App. 3d 558, 503 N.E.2d 778 (1987), is misplaced. *Kidd, Emerson, Monroe* and *Beringer* all stand for the proposition that it is improper to suggest that defense counsel fabricated a defense theory, attempted to free a client through deception, or suborned perjury. *Kidd*, 147 Ill. 2d 510; *Emerson*, 97 Ill. 2d 487; *Monroe*, 66 Ill. 2d 317; *Beringer*, 151 Ill. App. 3d 558. The State's use of the word "improper" here does not rise to the level of accusations charged against defense counsel in *Kidd, Emerson, Monroe* and *Beringer*. Furthermore, even if the State's remark constituted error, any error could be considered harmless given the overwhelming evidence in this case.

■ Defendant next urges us to remand for a new trial because the State failed to correct the false testimony of an eyewitness. Theresa Canady-Young testified for the State at trial. She testified that she observed defendant's white truck hit Alexander and Rosario as they were halfway across the street. She stated that the truck did not brake or slow down and continued for a little less than a block. On cross-examination, she testified that she gave a written statement at the State's Attorney's office two days after the incident. She testified that she did not remember to whom she gave the statement or whether she was asked to sign the statement. Following this testimony, defense counsel asked the State to produce the statement. A conference was held outside the presence of the jury wherein the State informed defense counsel that the State was unaware of any statement given by Canady-Young. The State did not have a grand jury transcript, notes of the conversation or a handwritten statement. While Canady-Young may have spoken with someone in the State's Attorney's office, there was no signed statement. Defense counsel then moved to strike Canady-Young's testimony. The trial court denied this request.

Defendant now claims that he is entitled to a reversal of his conviction because the State knowingly used the false testimony of Theresa Canady-Young and failed to correct this false testimony.

It is well established that the State's knowing use of perjured testimony to obtain a criminal conviction violates a defendant's right to due process of law. *People v. Olinger*, 176 Ill. 2d 326, 345, 680 N.E.2d 321, 331 (1997). "A conviction obtained by the knowing use of false testimony [will] be set aside if there is a reasonable likelihood that the false testimony could have affected the verdict." *People v. Thurman*, 337 Ill. App. 3d 1029, 1032, 787 N.E.2d 263, 266 (2003). These principles are also applicable when the State, while not soliciting false testimony, fails to correct it when it occurs. *Thurman*, 337 Ill. App. 3d at 1032, 787 N.E.2d at 266.

According to the applicable case law, the State only has an obligation to correct the testimony of a witness when it has knowledge that the witness is mistaken in his testimony. Here, the State indicated that "there is no doubt that she talked to State's Attorneys sometime along the way, but, as she said, she didn't sign anything." The evidence clearly establishes that the State believed that Canady-Young did not provide a signed statement based on the absence of a grand jury transcript, notes of the conversation and the handwritten statement itself. The State cannot be charged with the obligation to correct the false testimony of a witness when it does not know that the witness' testimony is false. Defendant's claim is without merit.

■ Defendant contends that the trial court erred in imposing the maximum extended-term sentence. As previously stated, defendant was sentenced to 14 years' imprisonment for reckless homicide and 12 years' imprisonment for aggravated driving under the influence, to run concurrently.

"It has long been established that the trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive." *People v. Jones*, 168 Ill. 2d 367, 373, 659 N.E.2d 1303, 1309 (1995). A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case and depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883 (1977). The imposition of a sentence is a matter within the trial court's discretion, and a reviewing court has the power to disturb the sentence only if the trial court abused its discretion. *Jones*, 168 Ill. 2d at 373-74, 659 N.E.2d at 1308.

"In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment must be equally weighed." *People v. Jones*, 295 Ill. App. 3d 444, 455, 692 N.E.2d 762, 770 (1998). There is a strong presumption that the

trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation that is before it. *People v. Partin*, 156 Ill. App. 3d 365, 373, 509 N.E.2d 662, 666-67 (1987). However, the trial court need not give "greater weight to the possibility of rehabilitation than to the seriousness of the offense." *Partin*, 156 Ill. App. 3d at 373, 509 N.E.2d at 666.

Defendant was convicted of reckless homicide, a Class 3 felony with a sentencing range of no less than 2 years and no more than 5 years (720 ILCS 5/9—3(a), (d)(2) (West 2002); 730 ILCS 5/5—8—1(a)(6) (West 2002)), and aggravated driving under the influence, a Class 4 felony with a sentencing range of no less than 1 year and no more than 3 years (625 ILCS 5/11—501(a)(2), (d)(1)(A) (West 2002); 730 ILCS 5/5—8—1(a)(7) (West 2002)). The jury found that the State proved specialized aggravating factors with respect to each offense, namely, that Alexander was under the age of 12 and Rosario was 60 years old. 730 ILCS 5/5—5—3.2 (b)(4)(i), (b)(4)(ii) (West 2002). As a result of the jury's finding, the trial court sentenced defendant to the maximum extended sentence for each offense: 14 years for reckless homicide and 12 years for aggravated driving under the influence.

In imposing sentence in this case, the court considered the presentence investigation report and numerous letters from defendant's family, friends and coworkers testifying to his good character, his benevolence, and rehabilitative potential. The court also heard argument from defense counsel. The court then considered each factor as enumerated by statute (see 730 ILCS 5/5—5—3.1, 5—5—3.2 (West 2002)) and discussed the factors in mitigation and aggravation, the crimes committed, and the harm inflicted. The trial court properly considered both mitigating factors and the defendant's rehabilitative potential in making its sentencing determinations and was within its discretion when it imposed the sentence. *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 883. We find no abuse of discretion here.

Finally, defendant argues the trial court erred when it relied upon factors inherent in the offenses to extend defendant's sentence. Defendant complains that the court relied on the death of Alexander and injuries to Rosario, as well as the ages of Alexander and Rosario, to extend his sentence.

It is error for a judge to consider in aggravation a factor that is inherent in the offense for which the defendant is being sentenced. *People v. Gonzalez*, 151 Ill. 2d 79, 83-84, 600 N.E.2d 1189, 1191 (1992). However, the nature of the offense, including the circumstances and extent of each element as committed, is a proper factor to consider in imposing a sentence. *People v. Miller*, 225 Ill. App. 3d 92, 104, 589 N.E.2d 617, 625 (1992).

Our review of the record reveals that the trial court did not improperly consider in aggravation factors that were inherent in the offenses for which defendant was being sentenced. The trial court only considered those factors outlined by statute and went through each factor individually. See 730 ILCS 5/5—5—3.1 (West 2002). Reviewing the trial court's statement regarding defendant's sentence, it is clear that the court was referring to the facts of the case when it stated, "[y]ou have got a 3-year old boy who was walking in a crosswalk with a green light when he was mowed down by Defendant." These remarks made by the trial court involved the nature of and circumstances surrounding the offense. It is proper for the trial court to consider these factors in determining an appropriate sentence. *Miller*, 225 Ill. App. 3d at 104, 589 N.E.2d at 625. Consequently, we reject defendant's claim.

Based on the aforementioned, the judgment of the trial court is affirmed.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.