2021 IL App (1st) 181190-U

No. 1-18-1190

Order filed April 9, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 60058 |
| | ) | |
| JAMES ROBERTS, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's sentence of 18 years' imprisonment for aggravated battery with a flammable substance is affirmed over his contention that the sentencing court improperly considered an element of the offense. Defendant's convictions for aggravated domestic battery and other convictions for aggravated battery are vacated under the one-act, one-crime rule.

¶ 2     Following a bench trial, defendant James Roberts was found guilty of six counts of aggravated battery and two counts of aggravated domestic battery and sentenced to a total of 18 years' imprisonment. On appeal, defendant contends that the trial court considered an element of

the offense at sentencing and that his convictions for aggravated domestic battery and aggravated battery violated the one-act, one-crime rule. We affirm defendant's conviction for aggravated battery with a flammable substance and vacate his remaining convictions for aggravated battery and aggravated domestic battery.

¶ 3    Defendant was charged by indictment with attempt first degree murder (720 ILCS 5/9-1(a)(1), 8-4(a) (West 2014)) (count I), aggravated battery with a flammable substance causing great bodily harm (720 ILCS 5/12-3.05(a)(2) (West 2014)) (count II), aggravated battery with a flammable substance causing severe and permanent disfigurement (720 ILCS 5/12-3.05(a)(2) (West 2014)) (count III), aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2014)) (counts IV-V), aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2014)) (count VI), aggravated battery causing permanent disfigurement (720 ILCS 5/12-3.05(a)(1) (West 2014)) (count VII), aggravated battery causing bodily harm to a victim whom he knew was 60 years or older (720 ILCS 5/12-3.05(d)(1) (West 2014)) (count VIII), and aggravated battery causing bodily harm at a public accommodation (720 ILCS 5/12-3.05(c) (West 2014)) (count IX).

¶ 4    At trial, Kathy Hajszani testified she married defendant in 2013. She identified him in court. In September 2014, Hajszani had lived separately from defendant for seven to eight months and dated another man. On September 7, 2014, at approximately 8:30 p.m., defendant visited her apartment in his wheelchair and asked if she would walk with him. They went to the Jewel on the 4300 block of North Broadway Street in Chicago for food because he was hungry. On the walk, defendant asked if they "could get back together," and Hajszani said, "No, absolutely not." They discussed the person Hajszani dated. Hajszani purchased chicken from the Jewel, and defendant also entered the store. Afterwards, they met at a stairway in the parking lot and defendant ate. They

again spoke of reuniting, and Hajszani said, "absolutely it's not going to happen." Then, she felt a "splash of cold" from below her chin to her waist.

¶ 5    Hajszani next remembered waking from a three-month coma in Stroger Hospital and going to the Rehabilitation Institute of Chicago for therapy because she could not walk, feed herself, or "hardly talk." She suffered burns to her head, neck, upper chest, and both arms, which required multiple skin grafts, and she presented the injuries in court. She wore a headscarf because she did not want people to see her "horrible" scars. The court observed "the scar tissue was rather profound and evidenced over 90 percent of her upper body" that was visible in court.

¶ 6    On cross-examination, Hajszani denied drinking alcohol that night and denied that the man she dated took money from defendant. Defendant had a bottle and cup of red wine. On redirect, Hajszani testified she wore a wig on September 7, 2014.

¶ 7    Gregory Guest testified on September 7, 2014, around 9 p.m., he purchased a bottle of beer from the Jewel and went behind a nearby building to drink, but was not intoxicated. He saw two people arguing. He recognized the woman from the neighborhood, and the other individual, who was in a mobility cart, as defendant, whom he identified in court. Defendant asked the woman about missing money and called her a "b***." She bent to grab a cup of wine, and defendant threw liquid over her entire body. Guest looked away, and when he turned back, he saw her on fire, screaming for help. Guest ran to her, removed her burning clothing and wig, and used a pillow to smother the flames. Defendant continually said, "die b***." After Guest put the fire out, the woman appeared very red and burnt on the upper part of her body and face. A man and woman approached, and this other woman pointed to an open bottle of rubbing alcohol next to the mobility

cart. Guest kicked the bottle away from the cart, and defendant told Guest he "should have let that b*** die."

¶ 8 Guest acknowledged he had a burglary conviction in 2008, a retail theft conviction in 2011, two burglary convictions in June 2015, and was incarcerated at the time of trial. On September 7, 2014, he was not homeless but was staying with a friend.

¶ 9 On cross-examination, Guest acknowledged that he wrote in a statement to police that he was homeless. Another man was with Guest that evening. Guest witnessed the woman and defendant drinking wine, "arguing and cussing at each other." The rubbing alcohol leaned against the mobility cart. He did not see defendant light a match.

¶ 10 Cheryl Eben testified that on September 7, 2014, she and her husband were in the Jewel parking lot at approximately 9 o'clock. She saw a woman on fire and a man use a "jacket or something" to put out the fire. She entered the Jewel and told someone to call 911. Eben returned outside and saw defendant standing by an electric mobility cart. She identified him in court. Police were present, and defendant tried to "scoot" a bottle of rubbing alcohol with his foot.

¶ 11 During cross-examination, Eben could not recall the appearance of the man who put out the fire. Defendant said the woman on fire was his wife, and the man who put out the fire said the woman was not defendant's wife.

¶ 12 Rosalda Martinez testified that she worked as a cashier at the Jewel on September 7, 2014. At approximately 9 p.m., she sold rubbing alcohol to a man in a motorized wheelchair.

¶ 13 Chicago police detective Fred Schall testified that on September 7, 2014, he photographed the Jewel parking lot and recovered items including a burned bra, a wig, and an empty bottle of rubbing alcohol. The bottle was inventoried and entered into evidence as People's Exhibit No. 13.

¶ 14    Illinois State Police forensic scientist Adrienne Bickel testified that she examined the burned wig and did not find any ignitable liquid on it. The bra contained isopropyl alcohol, a flammable substance.

¶ 15    The State entered a stipulation that Ronald Tomek of the Illinois State Police Crime Lab swabbed People's Exhibit No. 13 for potential DNA analysis. The State additionally entered a stipulation that State's Attorney investigator Anna Hoffbaum would testify that she obtained a buccal standard from defendant.

¶ 16    Brian Schoon, a forensic DNA specialist, testified he received the swab from the bottle, as well as defendant's buccal swab. He obtained defendant's DNA profile from the buccal swab and a partial male DNA profile from the bottle, and defendant could not be excluded from contributing to the partial DNA profile from the bottle. Approximately 1 in 950 million black people, 1 in 10 billion Hispanic people, and 1 in 18 billion white people could not be excluded from contributing to the DNA profile from the bottle.

¶ 17    Chicago police officer Daniel Andujar testified that on September 7, 2014, at 9 p.m., he and his partner, Officer Rodriguez, responded to the 4300 block of Broadway.[1] Andujar saw defendant, whom he identified court, in a motorized scooter. Andujar spoke to witnesses, and after defendant was arrested, recovered two lighters from defendant's pocket. On cross-examination, Andujar testified he observed a bottle of red wine and a Styrofoam cup at the scene, and prepared a supplemental report about the scene.

¶ 18    The State entered a stipulation that Dr. Lindsay Triebes treated Hajszani, who had burns covering 30 to 39% of her body surface.

---

[1] Officer Rodriguez's first name is not in the transcript.

¶ 19     Defendant testified that he was married to Hajszani at the time of trial and in September 2014. At that time, defendant was homeless and his leg had been amputated. "Three or four dates" after his surgery, he learned that Hajszani was involved with another man.

¶ 20     On September 7, 2014, defendant went to the Jewel with Hajszani, where she obtained a bottle of wine and he bought a bottle of rubbing alcohol so she could remove her makeup. Defendant did not pour rubbing alcohol on Hajszani or light her on fire. He did not remember Hajszani being lit on fire, and stated that "stress and aggravation" blocked his memory. Defendant loved Hajszani and would not hurt her.

¶ 21     On cross-examination, defendant testified that he was upset about some money he gave Hajszani to get them an apartment. On September 7, 2014, he knew about another person, but did not know if Hajszani had an affair with that person. Defendant denied being mad at Hajszani for having an affair, lighting her on fire, or saying, "I hope you die, b***." He denied telling officers that "she was withdrawing money from [his] bank account in small amounts" and that "she appeared to be having an affair with another man." He also denied telling Officer Andujar that he "began to argue because [he was] missing $600 from [his] personal bank account," or telling officers that he "believed [his] wife and the other man [were] the ones [who] took [his] money."

¶ 22     The State advised the court that it would call Officer Andujar in rebuttal, but defense counsel stated that she would stipulate to his testimony because "[i]t's right in his report." The court asked defense counsel whether she stipulated to "the contents of the report that the witness is cross examined on," and defense counsel replied that she stipulated that "Officer Andujar would testify that that is the conversation he had with [defendant]." The State entered the stipulation.

¶ 23    The court found defendant guilty of the six counts of aggravated battery and the two counts of aggravated domestic battery and acquitted him of attempt first degree murder. Defendant filed a motion for new trial, which was denied.

¶ 24    The presentencing investigation report (PSI) stated that defendant had been sentenced to jail in New York for harassment in 1985, and for second and third degree assault and criminal possession of a weapon in 1991. Defendant's parents raised him in a stable home, and he still spoke with his siblings. Defendant reported that he had a bachelor's degree in psychology and black studies, and in 1998, was diagnosed with "[d]epression/[a]nxiety." Prior to incarceration in this case, defendant received social security disability payments and was an active "street evangelist." Defendant reported having alcohol and crack cocaine problems.

¶ 25    Hajszani provided a victim impact statement wherein she wrote that everything changed for her after the attack. She awoke from a coma a few months after the incident, and "could not talk, walk, or do anything." She felt horrible and had "so much pain both physically and mentally." After "many years" working with nurses, doctors, therapists, and social workers, she finally lived on her own again, although it was difficult to feel safe in public.

¶ 26    In mitigation, defense counsel summarized defendant's medical history, which included multiple hospital admissions for deep vein thrombosis and diabetes. His right foot was amputated due to gangrene, and he had a history of depression, anxiety, and schizoaffective disorder. He had two college degrees and supportive siblings and a pastor, and attended church regularly. Counsel argued that to the public at large, defendant was harmless.

¶ 27    In aggravation, the State emphasized that defendant contacted Hajszani, procured the rubbing alcohol, lit her on fire, and called her "b***." Defendant's conduct caused serious harm,

put Hajszani in a coma for several months, and could have killed her. The State argued that defendant was unpredictable, had a history of violence, and deserved a long sentence that would deter others from committing the same crime.

¶ 28    Defendant spoke in allocution, emphasizing his two college degrees, illnesses, volunteering with Access Living, and activities as a street evangelist. Defendant also asserted that Hajszani "brought men into [their] apartment" and tried to take money from their bank account to go to a hotel with a man. He once again stated he did not remember what happened during the incident.

¶ 29    In imposing sentence, the court recognized defendant's strong educational background, good family history, the evidence and statutory factors in aggravation and mitigation, the financial impact of incarceration, the victim impact statement, defendant's difficult physical and mental health, and his allocution. The court found the offense was "fairly onerous," and that Hajszani's "life track was profoundly altered" by her time in the hospital and "the permanent alteration of her appearance." The court stated that it was "very mindful" of defendant's medical issues, but could not "understate the seriousness of the offenses which [defendant] has been convicted of."

¶ 30    The court merged count III into count II for aggravated battery with a flammable substance causing great bodily harm, and sentenced defendant to 18 years' imprisonment. The court also merged count V into count IV for aggravated domestic battery and sentenced defendant to seven years' imprisonment. Finally, the court merged counts VII, VIII, and IX into count VI for aggravated battery causing great bodily harm and sentenced defendant to five years' imprisonment. Each sentence was concurrent. Defendant filed a motion to reconsider sentence, alleging, in

relevant part, that the court improperly considered in aggravation matters that were implicit in the offense. The court denied the motion.

¶ 31    On appeal, defendant first argues that at sentencing the court improperly considered a factor inherent in the offense of aggravated battery, namely, the extent of harm that his conduct caused.

¶ 32    Initially, the State argues that defendant forfeited review of this argument because he failed to raise it in a contemporaneous objection at the sentencing hearing. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant contends that this issue was not forfeited because he included it in his postsentencing motion.

¶ 33    We conclude that defendant has not preserved this claim for review. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *Id.* Defendant failed to contemporaneously object, and therefore, did not preserve the alleged sentencing error.

¶ 34    In the alternative, defendant argues that the issue may be reviewed under the plain error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 11. A reviewing court may address a forfeited sentencing issue if a clear and obvious error occurred and either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so significant that it denied the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. "When a defendant fails to establish plain error, the result is that the 'procedural default must be honored.' " *People v. Naylor*, 229 Ill. 2d 584, 593 (2008) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). The initial consideration is whether a clear and obvious error occurred at all. *Hillier*, 237 Ill. 2d at 545.

¶ 35    The trial court's sentencing decisions are generally given great deference by the appellate court as they are within the trial court's discretion. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 20. Nonetheless, "the question of whether a court relied on an improper factor in imposing a sentence ultimately presents a question of law to be reviewed *de novo*." (Internal quotation marks omitted.) *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning." *People v. Bowman*, 357 Ill. App. 3d 290, 303-04 (2005). Ultimately, a defendant has the burden to establish that a sentence was based on improper considerations. *Bowen*, 2015 IL App (1st) 132046, ¶ 49. This requires a review of the whole record and not just "a few words or statements made by the sentencing court." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47.

¶ 36    An element of the crime for which a defendant has been convicted cannot also be used as an aggravating factor in determining the sentence. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "[A] single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed" because the legislature is assumed to have considered that factor to determine the range of punishment. (Internal quotation marks omitted.) *Id.* at 12. This rule is not intended to be applied inflexibly because "sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." (Internal quotation marks omitted). *Sauseda*, 2016 IL App (1st) 140134, ¶ 13.

¶ 37    A person commits battery when without legal justification he knowingly causes bodily harm to another. 720 ILCS 5/12-3(a) (West 2014). As charged here, a defendant commits aggravated battery when in committing a battery he knowingly causes great bodily harm by means

of a flammable substance. 720 ILCS 5/12-3.05(a)(2) (West 2014). This offense is Class X felony with a sentencing range of 6 to 45 years' imprisonment. 720 ILCS 5/12-3.05(h) (West 2014).

¶ 38    " '[G]reat bodily harm' is more serious or grave than lacerations, bruises, or abrasions that characterize 'bodily harm.' " *In re J.A.*, 336 Ill. App. 3d 814, 817 (2003) (quoting *People v. Costello*, 95 Ill. App. 3d 680, 684 (1981)). Because great bodily harm can happen in a variety of ways, the sentencing court is "required to consider the extent of great bodily harm or permanent disability inflicted on [the victim] and the manner in which it was inflicted" to determine the proper sentence. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 70. The court may properly consider the extent of the victim's injuries in sentencing where they exceed the required level for the element of great bodily harm. See *People v. Rader*, 272 Ill. App. 3d 796, 808 (1995) (affirming defendant's sentence for aggravated child battery predicated on causing great bodily harm or permanent disability where the court considered the degree of harm to the child).

¶ 39    Here, defendant argues that the trial court improperly considered an element of the offense, when at sentencing, the court addressed the extent of harm to Hajszani in noting that her "life track was profoundly altered" by her time in the hospital and "the permanent alteration of her appearance."

¶ 40    The record shows that the trial court considered several aggravating factors, including information from the PSI, the evidence and statutory factors in aggravation, and the victim impact statement. Defendant had a criminal history that included second degree assault in 1991. Furthermore, Hajszani was in a months-long coma and could not walk, talk or feed herself as a result of defendant's actions. She could only live on her own after years of treatment and therapy. She had multiple skin grafts and wore a head scarf, which she removed at trial, to obscure the

extent of her injuries. The court observed that her upper body was covered in burns and the visible scarring was "rather profound." She suffered burns over 30 to 39% of her body and it was difficult for her to feel safe in public after the attack. The extent of the harm inflicted went far beyond the minimum to prove great bodily harm. See *In re J.A.*, 336 Ill. App. 3d at 817 (evidence must be more serious than lacerations, bruises, or abrasions). Therefore, under the circumstances of this case, we find that the court made no clear or obvious error in considering the nature of Hajszani's injuries. See, *e.g.*, *Holman*, 2014 IL App (3d) 120905, ¶ 70. We therefore decline to review this claim for plain error. *Hillier*, 237 Ill. 2d at 545.

¶ 41    Defendant also argues that his convictions on count IV for aggravated domestic battery, and count VI for aggravated battery, should be vacated under the one-act, one-crime rule. The State agrees.

¶ 42    This issue was forfeited because it was not raised at the trial level. The Illinois Supreme Court, however, has found that violations of the one-act, one-crime rule challenge the integrity of the judicial process, and satisfy the second prong of the plain-error test. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). Alleged violations of the one-act, one-crime rule are reviewed *de novo*. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 15.

¶ 43    Under the one-act, one-crime rule a defendant may not be convicted for multiple offenses based on the same physical act. *People v. Smith*, 2019 IL 123901, ¶ 13. In cases where we find a one-act, one-crime violation, the proper remedy is to vacate the less serious offense. *In re Samantha V.*, 234 Ill. 2d at 379.

¶ 44    Here, each of defendant's convictions was based on the same physical act—defendant pouring a flammable substance on Hajszani and lighting her on fire. The trial court erred in

convicting defendant of multiple offenses based on this one act. Defendant's conviction for count II is aggravated battery with a flammable substance, a Class X offense. 720 ILCS 5/12-3.05(a)(2), (h) (West 2014). Defendant's conviction for count IV is aggravated domestic battery, a Class 2 felony. 720 ILCS 5/12-3.3(a), (b) (West 2014). Defendant's remaining conviction for aggravated battery causing great bodily harm under count VI is a Class 3 felony. 720 ILCS 5/12-3.05(a)(1), (h) (West 2014). Consequently, we vacate defendant's sentences for counts IV and VI**.**

¶ 45    For the foregoing reasons, we vacate defendant's sentences on count IV for aggravated domestic battery and count VI for aggravated battery and otherwise affirm.

¶ 46    Affirmed in part; vacated in part.